**Jude V. CASTRO, Plaintiff, Appellant,**

v.

**The STANLEY WORKS, Defendant, Appellee.**

**Jude V. CASTRO, Plaintiff, Appellee,**

v.

**The STANLEY WORKS, Defendant, Appellant.**

**Nos. 87–2143, 87–2144.**

United States Court of Appeals, First Circuit.

Heard Oct. 4, 1988.

Decided Jan. 10, 1989.

---

er, P.C., Boston, Mass., were on briefs, for Jude V. Castro.

Richard L. Neumeier with whom Francis E. Dooley, Jr., Paul A. Kelley, Jacqueline Y. Parker and Parker, Coulter, Daley & White, Boston, Mass., were on brief, for The Stanley Works.

Before BOWNES and BREYER, Circuit Judges, and BROWN,* Senior Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge.

## I. Behind the Eight Ball

On March 28, 1978, Jude V. Castro was injured in the course of his employment while reassembling a pool table using a spiral ratchet screwdriver designed, manufactured and sold by Stanley Works. Stanley Works did not receive notice of the claim until December 11, 1979, and the Complaint was filed on December 14, 1979, approximately 20 months after the accident.

A spiral ratchet screwdriver is a large screwdriver with interchangable bits. The tool is essentially of two parts, a spiral shaped long arm and a handle into which the arm retracts. With the bit inserted, and the arm extended, the tool is approximately 20 inches long. As a spiral screwdriver, the tool will turn a screw by being pushed.[1]

The tool may be set in three basic positions. In the first position, the arm turns clockwise and will insert a screw by pushing. In the second, it turns counterclockwise, and pushing the handle unscrews a screw. In the third, it is set in a rigid position in which the arm is either retracted into the handle or fully extended and the tool is used as a standard screwdriver.

If the tool is being used as a standard screwdriver with the arm withdrawn into the handle, the arm is held inside the handle by turning a band known as the lock collar. At the time of the accident, the screw driver was set in this fashion.

Leonard Glazer with whom Russell R. Weddell and Law Offices of Leonard Glaz-

---

* Of the Fifth Circuit, sitting by designation.

1. By pushing on the driver handle, the arm is drawn into the handle area in a spiral pattern and so turns the screw. A spring inside the handle of the tool pushes the arm forward after it has been drawn into the handle. This is known as "quick-return" and it permits the rapid screwing of several screws.

In the course of turning the screwdriver, Castro's hands became sweaty. The bit then slipped off the head of the screw causing Castro's hand to slip up the plastic handle and inadvertently hit the locking ring, releasing the shaft. The arm shot out to its fully extended position and the bit at the end of the arm struck Castro's left eye, puncturing the eyeball.[2]

Castro brought suit against Stanley alleging, among other things, negligence and breach of implied warranty of merchantability. The trial began August 21, 1987, and was held before Garrity, J. and a jury in the United States District Court.

Since Massachusetts, by a succession of statutory amendments, allows recovery on a product liability breach of warranty claim long after the expiration of the usual statute of limitations, the court, pursuant to Massachusetts General Laws, c. 106, § 2–318,[3] submitted under F.R.Civ.P. 49(a), the issue whether Stanley Works had been prejudiced as a result of a delay of 20 months in notification of the breach of warranty claim. Castro objected to this instruction on the grounds that as a matter of law, Stanley Works had failed to prove prejudice as required under Massachusetts General Laws, c. 106, § 2–318.

By its verdict on special interrogatories, F.R.Civ.P. 49(a), the jury found for Castro on the negligence claim, fixing Stanley Works' negligence at 65% and Castro's at 35%. Damages were fixed at $275,000. The jury also found for Castro that Stanley Works breached the implied warranty of merchantability which proximately caused Castro's injuries. The jury, however, found that Stanley Works had been prejudiced by delay in notification of the breach of warranty claim.

In the trial judge's mind this knocked out recovery on breach of warranty, leaving Castro's recovery dependent on the negligence and comparative negligence findings. On September 11, 1987, judgment was entered for Castro on the negligence finding in the sum of $275,000, less 35% for Castro's comparative negligence ($178,750).

Seeking to avoid a reduction for the 35% comparative negligence, Castro appeals on the grounds that under Massachusetts law Stanley Works, as a matter of law, failed to prove prejudice with the respect to the breach of warranty notice. Stanley Works filed a cross-appeal on the grounds that Castro failed to establish a causal relation between the design defects and Castro's accident.

## II. Snookered

■ To us, there is no merit to the appeals of either party. There is sufficient evidence to sustain a finding of liability on the part of Stanley Works and thus, the award of damages against Stanley Works. The verdict of a jury must be upheld unless "the facts and inferences, viewed in the light most favorable to [Castro], 'point so strongly and overwhelmingly in favor of' [Stanley Works] that a reasonable jury could not have found it negligent at all." *McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 131–32 (1st Cir.1987); *citing Chedd–Angier Production v. Omni Publications Int.*, 756 F.2d 930, 934 (1st Cir. 1985); *Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986, 989–90 (1st Cir.1978). In the instant case, a reasonable jury could have found Stanley Works negligent. We, therefore affirm the jury's award of $275,000 less the 35% for Castro's comparative negligence.

■ In regard to Castro's attack on the jury finding of prejudice and his argument that Stanley had to offer formal evidence of prejudice, we also find no merit. Indeed, we are somewhat amazed by Castro's argument on this point. When we read the

---

**2.** Castro was taken to a hospital where emergency surgery was performed on his left eye. He remained in the hospital for a week and was then transferred to the Massachusetts Eye and Ear Infirmary. On April 6, 1978, surgery was again performed and his left eye was removed because he would have no further useful vision in that eye. He remained in the hospital until April 11, 1978, and was later fitted with an artificial eye.

**3.** According to the statute, "[f]ailure to give notice shall not bar recovery under this section unless the defendant proves he was prejudiced thereby." Mass.Gen.Laws Ann. Ch. 106, § 2–318 (West 1988 Supp.).

cases in their full form, we found the test is not, as Castro urges, that formal prejudice results *only* from a loss of substance, but rather, that prejudice may result when "evidence which may reasonably have been developed by prompt investigation has been lost." *Morales v. National Grange Mutual Ins. Co.*, 176 N.J.Super. 347, 423 A.2d 325, 329 (1980); *Falcon Steel Co. v. Maryland Cas. Co.*, 366 A.2d 512 (Del.Super. 1976).

■ Formal proof of prejudice, therefore, is not necessary as Castro claims. It is sufficient that the 20–month delay in notification prevented Stanley Works from investigating fully the circumstances of the accident and ascertaining facts which later could not be determined, most notably the location of the pool table, its condition and the site of the accident in general.[4]

The decision of the District Court in both appeals was correct.

AFFIRMED.

See also, D.C., 101 F.R.D. 674.

**4.** Castro could not remember the identity or address of the customer whose pool table was being worked on, nor were Castro's employer's records available as the company went out of business several months after the accident.