**UNIGARD SECURITY INSURANCE COMPANY, Plaintiff–Appellee, Cross–Appellant,**

v.

**LAKEWOOD ENGINEERING & MANUFACTURING CORPORATION, Defendant–third–party–plaintiff–Appellant, Cross–Appellee.**

Nos. 91–35719, 91–35720.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1992.

Decided Dec. 23, 1992.

Gerald W. Gelfand, Seattle, WA, and Timothy J. Donaldson, Bellevue, WA, for appellee, cross-appellant.

David Tewell, Tewell & Findlay, Seattle, WA, for appellant, cross-appellee.

Before: FERGUSON, O'SCANNLAIN and RYMER, Circuit Judges.

FERGUSON, Circuit Judge:

This cross-appeal concerns the aftermath of a fire that largely destroyed a moored boat. Unigard Security Insurance Company, the boat's insurer, brought subrogation claims against Lakewood Engineering and Manufacturing Corporation, the manufacturer of an electric space heater that Unigard thought responsible for the fire. These claims were dismissed at summary judgment after the district court excluded Unigard's evidence as a sanction for its having destroyed the heater and the remains of the boat before filing suit. The district court declined to impose monetary sanctions against Unigard. The court also dismissed Lakewood's counterclaim in tort for spoliation of evidence.

Unigard and Lakewood challenge various aspects of these proceedings. We have jurisdiction over the district court's final orders, and we affirm in all respects.

### I. Background

The motor yacht Harpoon caught fire and was extensively damaged while moored on Lake Union in Seattle, Washington. A Seattle Fire Department arson investigator concluded that the cause of the fire was a short in the yacht's wiring near the radar. Unigard, which insured the yacht, hired its own experts—David Cater (a maritime surveyor) and Ed Flemming (a fire causation consultant)—to investigate the origin of the fire. Cater and Flemming examined the Harpoon, performing tests and taking documentary photographs in the region damaged by fire. They concluded that the cause of the fire was a portable electric space heater manufactured by Lakewood that had been left on, unattended, by the owner of the yacht. A warning label, located underneath the heater, read "DO NOT LEAVE UNATTENDED."

After receiving the experts' report, Unigard paid the claim brought by the insured. The Unigard adjuster assigned to the case consulted with two legal specialists in fire subrogation claims, both of whom concluded that subrogation from Lakewood was unavailable. These conclusions were based largely on the belief that the warning label was sufficient to excuse Lakewood from any damage resulting from the boat owner's having left the heater unattended. Because she thought that a subrogation claim was unavailable, Unigard's adjuster authorized disposing of the heater and selling the Harpoon for its salvage value.

Nearly two years later, Unigard turned over its files relating to the Harpoon to current counsel, Gerald Gelfand. Gelfand disagreed with the conclusions of the attorneys previously involved in the case; he thought the placement of the warning label on the bottom of the heater insufficient to provide a consumer with adequate warning. Gelfand thus believed Lakewood could be held legally responsible for a fire arising from an unattended Lakewood heater.

Unigard therefore filed a complaint against Lakewood in admiralty, setting forth four causes of action. Unigard asserted strict liability and negligence, pleading each as both maritime and non-maritime causes. Unigard informed Lakewood of the destruction of the heater in a phone call shortly after bringing the complaint.

Lakewood filed an answer, then an amended answer adding third party defendants (not involved in this appeal), and then was granted leave to file an amended answer and counterclaim against Unigard for the intentional tort of spoliation of evidence. The relief requested in Lakewood's counterclaim included dismissal of Unigard's claims with prejudice, attorneys' fees and costs, and punitive damages.

Lakewood moved for summary judgment on Unigard's subrogation claim and on its own spoliation tort claim, requested imposition of sanctions against Unigard pursuant to Fed.R.Civ.P. 11, 37, or under the court's inherent power, and requested punitive damages. Lakewood attached an affidavit from its expert, Marvin Salzenstein, to its summary judgment motion. Salzenstein stated that investigation of the heater and the vessel's remains were necessary to determine the cause of the fire.

The district court entered an order on summary judgment on February 14, 1991, stating that

> Unigard has admitted that it has "insufficient evidence to prove its case alleged in the Complaint if the testimony of Messrs. David Cater and Edward Flemming and evidence from the unavailable heater and vessel are not available to plaintiff." Because the Court finds that all of this evidence must be excluded, defendant's motion for summary judgment is GRANTED.

The court also denied Lakewood's motions for sanctions in that order.

Lakewood moved for reconsideration and amendment of the judgment concerning sanctions under Fed.R.Civ.P. 11 and 37; it also moved for summary judgment on its tort counterclaim for intentional spoliation of evidence, which it argued the district court had failed to resolve in its first order. Unigard cross-motioned for summary judgment on the spoliation counterclaim. On May 24, 1991, the district court entered a second Order on Summary Judgment a) denying Lakewood's motion to amend the February 14 order as to sanctions, and b) dismissing Lakewood's spoliation counterclaim.

Currently, Lakewood appeals from the February 14 and May 24 orders both as to sanctions and the spoliation counterclaim. Unigard cross-appeals on the February 14 order, asserting that summary judgment was improperly entered on its subrogation claim. Unigard also appeals the September 19, 1990, order granting Lakewood leave to file an amended answer and counterclaim.

## II. Jurisdiction and Choice of Law

■ Unigard's claims met the requirements for admiralty jurisdiction, 28 U.S.C. § 1333(1), under *Sisson v. Ruby*, 497 U.S. 358, 366, 110 S.Ct. 2892, 2898, 111 L.Ed.2d 292 (1990). The destruction of the Harpoon occurred on a navigable waterway of the United States, and the danger of disruption to maritime commerce provided the requisite nexus to traditional maritime activity.[1] Lakewood's counterclaim may have been proper under the ancillary jurisdiction of the district court, *see, e.g., Leather's Best, Inc. v. S.S. MORMACLYNX*, 451 F.2d 800, 809–11 (2d Cir.1971), but in any event the counterclaim independently satisfied the demands of diversity jurisdiction, 28 U.S.C. § 1332(a)(1). We have appellate jurisdiction under 28 U.S.C. § 1291.

The parties argue heatedly over choice of law. Unigard asserts that substantive maritime law controls exclusively, while Lakewood contends that maritime law is sufficiently sketchy for consistent land-based law to apply as a gap-filler. *See generally Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1422 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992); *Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1045–47 (3d Cir.1988). The district court looked beyond maritime law to land-based law, in part owing to its belief that Unigard could proceed with its non-maritime claims.

■ We find that it was proper in this case to consider land-based law so as to fill in the interstices of substantive maritime law, but note that this dispute over substantive law is largely a red herring. Resolution of this case turns not on substantive law but on procedural and evidentiary matters governed by the Federal Rules of Civil Procedure and the district court's inherent powers. Federal case law construing those rules and powers controls such matters. "The Federal Rules of Civil Procedure are fully applicable in admiralty cases." *Farbwerke Hoescht A.G. v. M/V Don Nicky*, 589 F.2d 795, 797 (5th Cir. 1979). *See also Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550 (1959); *Sun World Lines, Ltd. v. March Shipping Corp.*, 801 F.2d 1066, 1068 (8th Cir.1986). Substantive principles of admiralty may be

---

1. Although this has no bearing on the outcome of the case, we note that the district court improperly allowed Unigard to proceed with its putatively "non-maritime" counts. Substantive maritime law controls tort claims arising on navigable waterways of the United States with a sufficient nexus to traditional maritime activity, whatever the forum or asserted basis of jurisdiction. *King v. Alaska S.S. Co.*, 431 F.2d 994, 996 (9th Cir.1970).

controlling when in conflict with general, non-maritime federal evidentiary case law, *see, e.g., Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1555–56 n. 14 (11th Cir.1987), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988), but no conflict is present in this case.

Lakewood's spoliation counterclaim, brought in diversity, is controlled by the laws of the State of Washington.

### III. Unigard's Claims

Unigard cross-appeals from the district court's February 14 order granting summary judgment of dismissal on Unigard's negligence and strict liability claims. Because the merits of the cross-appeal are logically prior to the sanctions issues raised by the direct appeal, we first address the cross-appeal.

The crux of Unigard's cross-appeal is the propriety of the district court's exclusion of Unigard's expert testimony and other evidence from the boat and heater. Although the district court apparently intended to exclude Unigard's evidence under Fed. R.Civ.P. 37, we also review whether exclusion was proper as an exercise of the district court's inherent powers. "In reviewing decisions of the district court, we may affirm on any ground finding support in the record. If the decision below is correct, it must be affirmed, even if the district court relied on the wrong grounds or wrong reasoning." *Jackson v. Southern Cal. Gas Co.*, 881 F.2d 638, 643 (9th Cir. 1989) (citations omitted).

■ The standard of review for the district court's exclusion of evidence is the same under both Rule 37 and the court's inherent powers. We first engage in de novo review of the legal issue of whether the district court possessed the power to exclude Unigard's evidence. If the power existed, the district court's exercise of that power will only be reversed for an abuse of discretion. Underlying findings of fact are reviewed for clear error. *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 379 (9th Cir. 1988).

Finally, we must inquire de novo whether summary judgment was properly entered once Unigard's expert testimony had been excluded. *See Newton v. Uniwest Fin. Corp.*, 967 F.2d 340, 343 (9th Cir.1992).

### A. Rule 37

The district court's exclusion of Unigard's evidence was legally unavailable as a sanction under Fed.R.Civ.P. 37. Rule 37(b)(2)(B) authorizes, *inter alia*, the sanction of prohibiting a party from introducing designated matters in evidence if that party fails to comply with a court's order to provide or permit discovery. Rule 37(d) allows for any of the sanctions available in Rule 37(b)(2) if a party fails to attend her own deposition, or if she fails to respond to the opposing party's interrogatories or requests for inspection. *See* Fed.R.Civ.P. 37.

Unigard's actions do not fall within the literal language of Rule 37; the dispositive issue is whether the district court was correct in its legal conclusion that "the principles underlying [Rule 37] extend to situations where compulsion orders would be futile, because the evidence has been destroyed." The district court's reliance on *Synanon Church v. United States*, 579 F.Supp. 967, 976–77 (D.D.C.1984) as support for this holding is misplaced. *Synanon* states in a dictum the uncontroversial proposition that Rule 37 sanctions are available if a party has disobeyed a court's order to produce documents, even if the opposing party had not previously requested those documents under Fed.R.Civ.P. 34. *Id.*

The district court's broad reading of Rule 37 does find some measure of support. *See Alliance to End Repression v. Rochford*, 75 F.R.D. 438, 440 (N.D.Ill.1976) (defendant's pre-filing destruction of documents is a factor in court's imposition of Rule 37 sanctions). *See also Stubli v. Big D Int'l Trucks, Inc.*, 107 Nev. 309, 810 P.2d 785, 787–88 (1991) (plaintiff's pre-filing destruction of evidence warrants sanctions under NRCP 37, which parallels Fed.R.Civ.P. 37); *Fire Ins. Exch. v. Zenith Radio Corp.*, 103 Nev. 648, 747 P.2d 911, 913–14 (1987) (same).

■ This court, however, has foreclosed the application of Rule 37 sanctions in cases such as this where a party's alleged discovery-related misconduct is not encompassed by the language of the rule. The definition of "order" in Rule 37(b) has been read broadly. *See, e.g., Henry v. Sneiders,* 490 F.2d 315, 318 (9th Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974) (Rule 37 sanctions may be imposed on a party for disobedience to a court's request in oral proceedings, so long as those proceedings give the party unequivocal notice that a court has asked that certain documents be produced.). But Rule 37(b)(2)'s requirement that there be some form of court order that has been disobeyed has not been read out of existence; Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse. *See, e.g., Halaco,* 843 F.2d at 379–80; *United States v. National Medical Enters.,* 792 F.2d 906, 912 (9th Cir.1986); *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1338–39 (9th Cir.1985).

Similarly, we have limited application of Rule 37(d) to its literal scope. In *Halaco,* 843 F.2d at 380 n. 1, we held that Rule 37(d) does not extend to situations in which the rule is "inapplicable by its very terms," even when general discovery misconduct is alleged. *See also Pennwalt Corp. v. Durand–Wayland, Inc.,* 708 F.2d 492, 494 n. 4 (9th Cir.1983) ("Rule 37(d) ... is inapplicable because it addresses only a party's failure to appear at his own deposition.").

The district court was thus mistaken in its conclusion that it possessed the power to prohibit Unigard's expert testimony as a sanction under Fed.R.Civ.P. 37.

**B. Inherent Powers**

■ We find, however, that Unigard's evidence was properly excluded as an exercise of the district court's inherent powers. Courts are invested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)).

This circuit has recognized as part of a district court's inherent powers the "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. Within this discretion lies the power ... to exclude testimony of witnesses whose use at trial ... would unfairly prejudice an opposing party." *Campbell Indus. v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir.1980) (citations omitted). The district court therefore possessed the legal right to exercise its discretion in deciding whether to exclude Unigard's evidence.[2]

The district court, in its February 14 order, found that "Lakewood is precluded from gaining expert testimony related to whether the heater caused the fire," and that this case was one in which "plaintiff's destruction of key evidence renders a full defense impossible." These findings provide ample support for the court's discretionary conclusion that allowing Unigard to introduce the testimony of its experts would unfairly prejudice Lakewood and thus preclude the court's ability to conduct a fair trial.

---

**2.** *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980), and *Chambers,* —— U.S. at ——, 111 S.Ct. at 2135, can be read to preclude a court's inherent power to sanction a party in the absence of bad faith. *But see Roadway,* 447 U.S. at 767 n. 13, 100 S.Ct. at 2464 n. 13 ("[T]his opinion addresses only bad-faith conduct."). The district court in this case made no finding that Unigard acted in bad faith, and thus the court's inherent power to sanction was arguably unavailable.

The bad-faith requirement recognized in *Roadway,* however, is very likely limited to the context of sanctions in the form of cost- and fee-shifting. *See Chambers,* —— U.S. at —— – ——, 111 S.Ct. at 2140–41 (Scalia, J., dissenting). This court has, since *Roadway,* confirmed the power of the district court to sanction under its inherent powers not only for bad faith, but also for willfulness or fault by the offending party. *Halaco Eng'g Co. v. Costle,* 843 F.2d 376, 380 (9th Cir.1988). Unigard's "fault" is manifest in the record.

Unigard relies on *Wong v. Swier*, 267 F.2d 749, 759–60 (9th Cir.1959), to argue that exclusion of its evidence was improper. According to Unigard, *Wong* mandates that the sole proper sanction for a party's tampering with evidence is a rebuttable presumption against the responsible party that the evidence, if it had not been despoiled, would have been detrimental to the despoiler. Thus, excluding Unigard's experts' testimony, rather than imposing a rebuttable presumption, was an unwarranted abuse of discretion. *Cf. Halaco*, 843 F.2d at 380 ("efficacy of lesser sanctions" is a necessary criterion in reviewing a district court's exercise of its inherent powers to impose sanctions for discovery abuses).

This argument falls short on closer inspection. The degree of *Wong*'s factual divergence from the case at bar reveals that—notwithstanding *Wong*'s sweepingly stated dicta—the holding and underlying reasoning are entirely consistent with the district court's actions in this case. In *Wong*, the evidence of tampering was equivocal at best, and the charge of tampering had been fully brought to the jury's attention. *Wong*, 267 F.2d at 758–61. Furthermore, both parties had had a chance to inspect the evidence before the alleged tampering. *Id.* Finally, significant evidence remained for the *Wong* jury to consider, even discounting that allegedly tainted by tampering. *Id.* In such a factual context, a district court's imposition of anything more than a rebuttable presumption against a purported despoiler would be an abuse of discretion.

In this case, Unigard's destruction of evidence was not in dispute; it precluded Lakewood from any opportunity to inspect the evidence; and it rendered unreliable virtually all of the evidence that a finder of fact could potentially consider. Given these factors, it was within the district court's discretion to determine that a rebuttable presumption against Unigard would have been insufficient to cure the prejudice arising in the context of this case. *Cf. Welsh v. United States*, 844 F.2d 1239, 1246–47 (6th Cir.1988) (factually specific, case-by-case analysis necessary to determine proper penalty for destruction of evi-

dence), *cited in Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1567, 118 L.Ed.2d 212 (1992). *See also Fire Ins. Exch. v. Zenith Radio Corp.*, 103 Nev. 648, 747 P.2d 911, 914 (1987) (exclusion of expert testimony for plaintiff's destruction of evidence, rather than imposition of a rebuttable presumption, was not an abuse of discretion because "[a]ny adverse presumption which the court might have ordered as a sanction for the spoliation of evidence would have paled next to the testimony of the expert witness").

■ Unigard also argues that Lakewood should be equitably estopped from benefitting from its wrongful conduct in placing its warning label on the underside of the heater. This argument is wholly without merit: Unigard has destroyed all reliable evidence that Lakewood's heater played any role in causing the fire, whether through improper placement of the label or otherwise.

*C. Summary Judgment*

Once the district court excluded "the testimony of Messrs. David Cater and Edward Flemming and evidence from the unavailable heater and vessel," Unigard lacked the ability to put forward a prima facie case or to offer any admissible evidence creating a disputed material fact. Summary judgment was entirely appropriate as a matter of law.

*IV. Sanctions Against Unigard*

■ Lakewood appeals from the district court's denial of monetary sanctions against Unigard under Fed.R.Civ.P. 11 and 37 in its February 14 order. Under Rule 37, sanctions of any sort were improper. *See supra* § III.A. We review a denial of Rule 11 sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990).

Rule 11 imposes upon a party or attorney who has signed a paper or pleading "an affirmative duty to conduct a reasonable inquiry into the facts and the law before

filing.... [T]he applicable standard is one of [objective] reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic Communications Enters.*, 498 U.S. 533, ——, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991). Rule 11 sanctions are "reserve[d] ... for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Eng'rs. Pension Trust v. A–C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously." *Id.*

Thus, we must decide whether an objectively reasonable legal inquiry would have demonstrated to Unigard that it clearly had insufficient admissible evidence to bring a non-frivolous case. Although the district court was entirely justified in its statement to Gelfand at oral argument that Unigard's filing the suit was "appallingly ill-advised," the district court did not abuse its discretion in concluding that the case law on the effect of a plaintiff's pre-filing destruction of evidence is "not so clear and pervasive" as to require Rule 11 sanctions.

There is sufficient case law to support a reasonable belief that Unigard could introduce sufficient evidence to bring a non-frivolous case in which Lakewood's experts would testify based on the photographic record and Unigard's own experts would testify with only a rebuttable, negative presumption attached to the consequences of the destruction of evidence. First, *Wong v. Swier*, 267 F.2d 749 (9th Cir.1959), as discussed in § II.B, *supra*, is quite helpful to Unigard. As one court stated,

> There is ... an alarming lack of authority for the proposition that a party to a lawsuit cannot destroy an item of evidence in the course of, or after, his expert has examined it, tested it, and formed an opinion thereon, but before defendants are given notice or an opportunity to likewise examine it.... However abhorrent to principles of fair dealing, it appears that the tampering, destruction or suppression of evidence raises only a presumption that such evidence

would have been unfavorable to the party responsible for doing it.

*Barker v. Bledsoe*, 85 F.R.D. 545, 547 (W.D.Okla.1979) (citing *Wong* ).

Furthermore, several other cases augment the objective reasonableness of Unigard's belief that it was bringing a non-frivolous case. In *S.C. Johnson & Son v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258 (7th Cir.1982), the court held that for a negative presumption to result from the destruction of evidence, "[f]irst the court must be of the opinion from the fact that a party has destroyed evidence that the party did so in bad faith. Only then may the court infer from this state of mind that the contents of the evidence would be unfavorable to that party if introduced in court." *Accord Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed.Cir. 1986). *See also Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir.1988) ("Some courts assign no adverse evidentiary consequences to destruction of evidence that is unintentional or satisfactorily explained.").

■ Unigard's destruction of evidence was at least arguably not in bad faith: its belief that subrogation was unavailable at the time of the destruction is—within the bounds of zealous advocacy—a potentially satisfactory explanation for the destruction. Thus, it was not frivolous for Unigard to file suit in the anticipation that it would be allowed to introduce evidence with a rebuttable negative presumption attached to its destruction of evidence. Because the frivolousness prong of Rule 11 is measured by *objective* reasonableness, *see Zaldivar v. Los Angeles*, 780 F.2d 823, 829 (9th Cir.1986), whether Unigard actually relied on these cases is irrelevant.

Lakewood's contention that Unigard or Gelfand breached the Code of Professional Responsibility or the Rules of Professional Conduct and thereby violated Rule 11 is without merit.

## V. *Lakewood's Spoliation Counterclaim*

In its May 24 Order on Summary Judgment, the district court dismissed Lakewood's counterclaim against Unigard for

the intentional tort of spoliation of evidence. This relatively novel tort has been recognized in several states, following *Smith v. Superior Court*, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984). Our review is de novo. *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 886 (9th Cir.1991).

 The factual context of this case makes it unnecessary for us to predict whether or not the State of Washington would recognize the tort of spoliation of evidence in an appropriate case. As the district court noted, the spoliation tort has only been applied when a defendant—or a third party with a duty to the plaintiff—has spoliated evidence. In that context, the spoliation damages a right that the other party possesses: the capacity to bring a lawsuit. Such intentional injury to another's legal interest is akin to traditionally recognized tort actions. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 1, at 3–4 (5th ed. 1984).

 This case presents an entirely different scenario. Unigard's unconcealed destruction of the heater and vessel caused no harm to Lakewood; the spoliation damaged Unigard's own ability to bring a claim against Lakewood. Unigard arguably harmed Lakewood by filing suit, thereby forcing Lakewood to defend an action rendered frivolous by the absence of admissible evidence. Whether Unigard's filing of the suit after having spoliated evidence harmed Lakewood is a Rule 11 issue, however; it does not present a valid spoliation claim.[3]

### VI. Timeliness of Lakewood's Amended Answer and Counterclaim

Unigard appeals from the district court order granting Lakewood leave to file an amended answer and counterclaim. Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This court reviews for abuse of discretion, "but such denial is 'strictly' reviewed in light of the strong policy permitting amendment." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir.1991).

3. We do not address whether the State of Washington would find that a spoliation tort claim

Unigard has not demonstrated any undue delay, bad faith, or futility of amendment on Lakewood's part, nor has it demonstrated prejudice arising from the delay. *See id.* The district court did not abuse its discretion.

### VII. Conclusion

For the foregoing reasons, the judgments of the district court are AFFIRMED.

can be brought when a plaintiff *conceals* spoliation of evidence.