UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-1345

ROBERT J. SACRAMONA,

Plaintiff, Appellant,

v.

BRIDGESTONE/FIRESTONE, INC.,
and THE BUDD COMPANY,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge] 



Before

Selya, Circuit Judge, 

Aldrich, Senior Circuit Judge, 

and Boudin, Circuit Judge. 



Michael K. Gillis with whom Gillis & Bikofsky, P.C. was on briefs 
for appellant.
Francis H. Fox with whom John R. Skelton and Bingham, Dana & 
Gould LLP were on brief for appellee Bridgestone/Firestone, Inc. 
Edward M. Kay with whom Michael W. Duffy, P. Scott Ritchie, 
Clausen Miller, P.C., Robert M. Spence, Assistant General Counsel, 
Mark R. Karsner and Karsner & Meehan, P.C. were on brief for appellee 
The Budd Company.



February 13, 1997


BOUDIN, Circuit Judge. Robert Sacramona, the plaintiff 

in this diversity action, appeals from the district court's

grant of summary judgment against him. His claims arose from

an accident that occurred when Sacramona sought to mount and

inflate a tire manufactured by defendant

Bridgestone/Firestone, Inc. on a wheel manufactured by

defendant, The Budd Company. The appeal is essentially a

challenge to the district court's rulings on the destruction

or loss of evidence and resulting prejudice to the

defendants.

The facts are as follows. On May 4, 1988, a customer

drove his van into the Economy Mobil gas station for repair

of a leaking tire. Sacramona, the station's new manager,

removed the tire and decided to replace rather than repair

it. Because the station did not have an appropriate new

tire, Sacramona selected a used, 16-inch tire from a rack of

tires at the station as a temporary replacement, intending

later to get a new tire for the customer.

The replacement tire bore warnings that it was to be

used only with a 16-inch wheel. Sacramona later admitted

that he did not check the diameter of the wheel rim; he said

that he chose a 16-inch tire because the tire that he removed

was also 16 inches. But the replacement tire apparently did

not fit the wheel, which Sacramona now says was 16-1/2

inches. After Sacramona struggled to mount the tire--using a

-2- -2-

tire mounting machine and lubricant, striking the tire with a

hammer, and bouncing it on the ground--the tire allegedly

exploded as he again attempted to inflate it, causing him

numerous injuries.

Sacramona was taken to the hospital by ambulance.

Another service station employee put the damaged replacement

tire on the wheel without inflating it, and the customer

drove back home very slowly on the uninflated tire. The

customer subsequently had the wheel and damaged tire removed

from his van and left them unprotected in his outdoor yard.

In August 1988, Sacramona's attorney obtained the tire and

wheel.

Around February 1, 1989, the attorney gave both the tire

and wheel to an expert consulting engineer, Dyer Carroll, who

examined them and then sent them to Sacramona's liability

expert, Dr. Alan Milner, on September 30, 1991. In the

meantime, on May 3, 1991, Sacramona filed his complaint in

this case, one day before the three-year statute of

limitations expired, asserting tort and warranty claims. His

is theory is this: that the automotive industry knew that

there was a risk of harm from mismatching tires and wheels,

and that the wheel, tire, or both could have been designed--

over and above the warnings on the tire--to reduce the risk

that such a dangerous mismatch would occur.

-3- -3-

By the time of the lawsuit, the Mobil station had been

sold and many of its contents were gone, including the

original leaking tire, the mounting machine, and various

safety or equipment manuals and documents. In addition,

during his deposition, Milner said that the wheel had

undergone a "somewhat destructive" examination and that he

understood from Sacramona's lawyer that Carroll had conducted

an extensive cleaning of the wheel. It was thus impossible

to check for markings on the inside of the wheel that might

have revealed whether (as Sacramona claimed) the original

leaking tire had been a 16-inch tire mismatched with a 16-

1/2-inch wheel.

After discovery, the defendants moved for summary

judgment on several grounds, asserting inter alia that 

critical evidence had been destroyed in the cleaning of the

wheel. In opposition, Sacramona attached a brief affidavit

from Carroll denying that he had destroyed such evidence.1

The district court ruled that evidence of the wheel should be

excluded, finding that defendants' "experts have been

deprived of the opportunity to examine relevant, possibly

dispositive evidence before its material alteration." The

 

1Carroll's own deposition testimony, apparently not
called to the district court's attention at this stage,
revealed that Carroll's son had assisted in the cleaning but
denied that anyone had destroyed evidence.

-4- -4-

trial judge treated the wheel's exclusion as fatal to both

the negligence and warranty claims.

The district court also granted summary judgment to the

defendants on Sacramona's warranty claims on an independent

ground. Sacramona had not notified Firestone of his claims

until three years after the accident; and Budd did not get

notice for three more months (service of the complaint having

been delayed). The district court ruled that the defendants

had been prejudiced by this delay because evidence had been

lost, and that the warranty claims were therefore barred by

Mass. Gen. Laws ch. 106, 2-318.

Sacramona has now appealed, challenging both rulings:

the dismissal of both claims because of damage to the wheel

and the dismissal of the warranty claim for prejudicial

delay. We address each asserted error in turn, applying the

standard of review fitting the specific issue. Broadly

speaking, propositions of law are examined de novo, findings 

of fact are reviewed under the clear error standard, and most

remaining issues (e.g., applying multiple factors to known 

facts) are tested for "abuse of discretion." See generally 

United States v. Wilson, 798 F.2d 509, 512 (1st Cir. 1986). 

1. Under settled authority, the district court has

inherent power to exclude evidence that has been improperly

altered or damaged by a party where necessary to prevent the

non-offending side from suffering unfair prejudice. Unigard 

-5- -5-

Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 

368 (9th Cir. 1992); Headley v. Chrysler Motor Corp., 141 

F.R.D. 362, 365 & n.13 (D. Mass. 1991). Although deterrence

may play a role, the primary aim is remedial, at least absent

willful destruction. This power is a companion to, but

somewhat different in effect from, the doctrine that permits

an adverse inference from one side's destruction of evidence.

22 C. Wright & K. Graham, Federal Practice and Procedure: 

Evidence 5178, at 153-59 (1978). 

Sacramona's first argument against the exclusion of the

wheel on grounds of prejudicial damage is that the district

court "did not weigh the evidence in the light most favorable

to the non-moving plaintiff" and therefore the issue had to

be submitted to the jury. Sacramona says that a factual

dispute exists as to whether any such damage occurred,

"particularly in light of the sworn deposition testimony of

Dyer E. Carroll, . . . who stated that he never scraped any

evidence from the wheel or cleaned it with any abrasive

material."

The request for a jury rests on a misunderstanding. It

is familiar law that the district judge decides most

preliminary factual issues that arise in determining the

admissibility of evidence. Fed. R. Evid. 104(a). The main

exception is that under Fed. R. Evid. 104(b), issues of

conditional relevance are normally submitted to the jury.

-6- -6-

Sacramona invokes the latter rule, arguing that the issue

whether the wheel had been damaged was an issue of

conditional relevance that should have been submitted to the

jury. 

The district court said that the wheel was being

excluded, in the alternative, both as a sanction for damage

to it and because the damage made the wheel irrelevant. But

in fact the alleged damage to the wheel's inner surface

merely prevented one possible use of the wheel--to show that

the original tire was or was not 16 inches. The wheel, or

testimony about it, remained relevant to prove whether the

wheel itself was 16-1/2 inches, which was one critical

premise of Sacramona's mismatch theory. Thus, the only basis

for exclusion of the wheel was prejudicial damage, an issue

that Rule 104(a) reserves to the trial judge.

There is more force to Sacramona's claim that the

district court may have erred in deciding that Carroll had

cleaned the wheel. In moving for summary judgment, the

defendants relied upon several different admissions by Milner

in his deposition, adding up to the following: that the

inside of the wheel had been cleaned, removing the

possibility of recovering useful evidence; that Sacramona's

counsel had identified Carroll as the source of the cleaning;

and that Milner had sought to obtain photographs of the wheel

prior to cleaning but none had been taken by Carroll.

-7- -7-

In opposition, Sacramona countered with a brief

affidavit of Carroll that he had not cleaned any substantial

portion of the inside of the wheel. Sacramona argued on this

basis (mistakenly) that the issue was one for the jury. But

in any event the affidavit was not much of an answer: Milner

said that the inside of the wheel had been cleaned; and

whether or not Carroll had done it, the wheel had admittedly

been in the custody of the plaintiff's counsel or one of his

experts since it was recovered from the customer's backyard.

It is thus not entirely surprising that the district

court ruled that the plaintiff was responsible for the

damage. At this point, Sacramona offered new evidence: on

his motion for reconsideration, a new affidavit was filed by

Milner, saying that he had been misunderstood and had not

testified that the inside of the wheel had been cleaned.

Sacramona's counsel also filed an affidavit, which generously

could be read to assert that his law firm had given the wheel

to Carroll and retrieved it unaltered.

But Milner's affidavit did not squarely dispute that the

wheel had been cleaned; and in denying that Carroll had done

the cleaning, the Milner affidavit squarely contradicted his

own prior deposition without explanation. As for counsel's

affidavit, it made no effort to deny or explain Milner's

deposition testimony that counsel had told Milner that 

Carroll had cleaned the wheel. Taking the matter on the

-8- -8-

deposition testimony and affidavits, we are not prepared to

rule that the district court's finding of damage by plaintiff

was clear error.

In our view, it would have been sounder to hold an

evidentiary hearing on the issue of damage and responsibility

for it, at least when on reconsideration it became clear that

the issue was murky. If at this stage Sacramona had squarely

requested such a hearing, it might well have been an abuse of

discretion to deny it. See General Contracting & Trading Co. 

v. Interpole, Inc., 899 F.2d 109, 115 (1st Cir. 1990). But 

there is no single mode of resolving factual disputes under

Rule 104(a), and we will not ordinarily reverse on a

procedural objection never made. Aoude v. Mobil Oil Corp., 

892 F.2d 1115, 1120 (1st Cir. 1989).

Sacramona's next argument is that if there was

destruction, it was not done in bad faith. Certainly bad

faith is a proper and important consideration in deciding

whether and how to sanction conduct resulting in the

destruction of evidence. But bad faith is not essential. If

such evidence is mishandled through carelessness, and the

other side is prejudiced, we think that the district court is

entitled to consider imposing sanctions, including exclusion

of the evidence. See Nation-Wide Check Corp., Inc. v. Forest 

Hills Distrib., Inc., 692 F.2d 214, 219 (1st Cir. 1982); 

-9- -9-

Unigard, 982 F.2d at 368 n.2; Headley, 141 F.R.D. at 365 & 

nn. 13-14.

Less need be said about Sacramona's further claim that

any evidence lost from damage to the wheel was evidence that

could only have favored the plaintiff. Yes, if the wheel had

been undamaged, it might have helped Sacramona by showing

marks indicating that the original leaking tire had been 16

inches. But the absence of such marks, had the tire not been

cleaned, would have helped the defendants by suggesting the

opposite. Plainly, this is not a case in which we can say

that the lost evidence could only have helped Sacramona.

2. Sacramona's final argument addressed to the sanction

presents a quite different and more troubling concern. In

Sacramona's petition for reconsideration, he argued (among

many other points) that a proportionate sanction for damage

to the wheel would merely prevent Sacramona from arguing that

the original tire was 16 inches. He also asserted that his

design defect claim remained viable, even if no 16-inch tire

had been on the wheel when it was brought into the service

station. 

The defendants' response in the district court, renewed

on appeal, is that Sacramona's theory of design defect

depends on a showing that the injury in this case resulted

from an attempt to place a 16-inch tire on a 16-1/2-inch

wheel. And, say the defendants, the exclusion of the wheel

-10- -10-

(as a sanction for damaging the evidence) also should prevent

any proof that the wheel was 16-1/2 inches. In the district

court's own words at the time of its original ruling:

As a result of this exclusion [of the wheel],
plaintiff will be unable to produce any evidence or
testimony that a 16.5 inch wheel was involved in
the accident or that it was defective. Because
Sacramona's claim is premised entirely upon his
unprovable allegation that a 16-inch tire was in
dynamic service with a 16.5-inch wheel, there is no
genuine issue of material fact to support
Sacramona's allegations and, consequently,
defendants are entitled to summary judgment.

The problem with this reasoning, as we see it, is that

it gives the defendants a sanction that goes well beyond what

is necessary to cure the prejudice. Accepting the district

court's finding of damage by plaintiffs to the interior

surface of the wheel, the defendants were prejudicially

hindered in rebutting Sacramona's claim that he had removed a

16-inch tire from the wheel. A commensurate sanction might

have included an order barring Sacramona from claiming that

the original tire was 16 inches.

But neither the district court nor the defendants

explain why any broader sanction was needed to undo the harm

caused by the wheel's cleaning. In fact, one defendant

apparently urged the more limited sanction--precluding

Sacramona's claim that the original tire was 16 inches--as an

alternative to dismissal. And there is no finding that the

damage was willfully intended to deprive the defendants of

-11- -11-

helpful evidence, arguably a basis for a sanction that does

more than undo the harm.

Nevertheless, a narrowing of the sanction would not have

saved the negligence claim against the defendants. Under

Massachusetts law, contributory negligence by the victim is a

bar to any recovery if it represents more than 50 percent of

the total negligence on both sides. Mass. Gen. Laws ch. 231,

85. Whether or not the wheel or tire might have been more

safely designed, it would be patent negligence by the

plaintiff to select a 16-inch tire as a replacement without

some good reason to think that the wheel was also 16 inches.

Sacramona's only asserted basis for selecting the 16-

inch replacement was that the leaking tire taken from the

wheel was a 16-inch tire, presumably based on its labeling.

If Sacramona were precluded from making that claim, a finding

of serious negligence on Sacramona's part could hardly be

avoided. Indeed, Sacramona would appear to be doubly

negligent: first in selecting the 16-inch tire without any

basis for doing so and, second, in his repeated efforts to

seat and inflate the tire even when failure showed that

something was wrong. Thus, even if the sanction were limited

as Sacramona suggests, his negligence claim would still fail.

We therefore affirm summary judgment on this claim.

The more limited sanction, however, would not

necessarily preclude the warranty claim. Contributory

-12- -12-

negligence is not an automatic defense to a warranty claim

under Massachusetts law. Colter v. Barber-Greene Co., 525 

N.E.2d 1305, 1313-14 (Mass. 1988). This, in turn, brings us

to the district court's alternative ground for dismissing the

warranty claim.

3. Neither side disputes that Massachusetts law

embodies a notice requirement for warranty claims. As the

rule has been formulated, a plaintiff must give reasonably

prompt notice of his warranty claim to the potential

defendant; if he fails to do so, and the defendant is thereby

prejudiced, the warranty claim is barred even if it is

brought within the statute of limitations. Although merely

implied by a Massachusetts statute, Mass. Gen. Laws ch. 106,

2-318, case law has fleshed out the notice requirement.

Castro v. Stanley Works, 864 F.2d 961, 963 (1st Cir. 1989); 

Cameo Curtains, Inc. v. Philip Carey Corp., 416 N.E.2d 995, 

998 (Mass. App. Ct. 1981).

Whether notice is unreasonably delayed can be a thorny

issue but, in this case, undue delay is obvious and Sacramona

does not even argue to the contrary. And assuming an

unreasonable delay in notice, the prejudice showing is

relatively easy: it is enough that the delay may well have

deprived the defense of useful evidence. No showing is

required that lost evidence would inevitably have altered the

-13- -13-

outcome. Castro, 864 F.2d at 964. In short, the notice 

requirement has real teeth.

The reason for this rule in Massachusetts is that

warranty liability combines features that place potential

defendants at serious risk: strict liability, lack of

privity, and a statute of limitations that may run not from

the sale but from the injury. Cameo Curtains, 416 N.E.2d at 

997. As a counterweight, the requirement of prompt notice

allows the defendant to gather evidence in timely fashion;

without such notice, a defendant could easily be surprised by

a lawsuit many years after selling its products. Cf. Castro, 

864 F.2d at 963.

In the present case, notice was plainly delayed; and the

district court found that the requisite prejudice had been

shown by the defendants. On appeal, Sacramona contests this

latter finding on two related grounds: first, that

prejudice, in this context, is an issue for the jury under

Massachusetts law; and, second, that the district court in

finding prejudice resolved disputed issues on summary

judgment without giving the benefit of doubts and inferences

to the non-moving party.

Massachusetts does treat the defense as a jury issue,

Henrick v. Coats Co., Inc., 458 N.E.2d 773, 774-75 (Mass. 

App. Ct. 1984), and--regardless of whether this practice

-14- -14-

would be binding on a federal court2--we ourselves treat as a

jury issue fact questions presented by a statutes of

limitation defense, Villarini-Garcia v. Hospital Del Maestro, 

Inc., 8 F.3d 81, 84 (1st Cir. 1993), which offers an analogy 

to the notice requirement. But the question remains whether

a reasonable jury would still have been compelled to find

prejudice here.

We review such determinations de novo, assuming that the 

jury would credit the non-movant's version of events. E.g., 

Continental Ins. Co. v. Arkwright Mutual Ins. Co., 102 F.3d 

30, 33 n.4 (1st Cir. 1996). Yet, even if the jury found that

Carroll had not caused prejudicial damage to the wheel, the

loss of the remaining evidence would be beyond dispute: the

original leaking tire, the other wheels and tires on the

customer's van, and the equipment in the garage, including

the tire changer, the pressure gauge, and the manuals. This

material might have been salvaged if Sacramona had given

prompt notice to the defendants after the accident; instead,

he waited three years.

The original tire itself, without more, could have been

very helpful evidence. If it had proved to be 16-1/2 inches,

 

2The extent to which state jury practice binds a federal
court in a diversity case involves consideration of the Erie 
doctrine, the Rules of Decision Act, and the Seventh
Amendment. See generally Byrd v. Blue Ridge Rural Elec. 
Coop., 356 U.S. 525 (1958); Herron v. Southern Pacific Co., 
283 U.S. 91 (1931). We need not pursue the subject here.

-15- -15-

this might have persuaded the jury that the cause of the 

accident was Sacramona's own conduct rather than any design

defect. See Colter, 525 N.E.2d at 1312. Of course, since 

contributory negligence is not a defense to the warranty

claim, the jury would have had some latitude. But to show

prejudice based on a lack of notice, the defendants needed

only to prove that evidence was lost that might well have

helped them, and that they have done. 

In fact, on appeal Sacramona makes relatively little

effort to show how a jury could have failed to find

prejudice. His factual appraisal of lost evidence is

confined to question whether the wheel was damaged; for the

rest, his brief simply asserts that prejudice is a jury

issue. Indeed, it is--but only where a reasonable jury could

decide the issue either way. Here, given the low threshold

for the showing and the admitted loss of evidence, the

outcome on this issue was inevitable.

Affirmed. 

-16- -16-