**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

KEVIN R. SMITH,

             Plaintiff - Appellant,

    v.

UNITED PARCEL SERVICE, INC.,

             Defendant - Appellee.

No. 10-15563

D.C. No. 2:08-cv-01313-RCJ-RJJ

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted April 13, 2011
Pasadena, California

Before: REINHARDT, HAWKINS, and GOULD, Circuit Judges.

    Kevin R. Smith appeals the district court's adverse grant of summary

judgment in his action against United Parcel Service, Inc. ("UPS") alleging

violations of federal and state law. Smith also appeals the district court's denial of

his motions to strike affidavit evidence and to impose sanctions for spoliation of

---

    [*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

evidence. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part,

reverse in part, and remand.[1]

## I

"In order to prevail in a Title VII case, the plaintiff must establish a prima

facie case of discrimination. If the plaintiff succeeds in doing so, then the burden

shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its

allegedly discriminatory conduct. If the defendant provides such a reason, the

burden shifts back to the plaintiff to show that the employer's reason is a pretext

for discrimination." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2004).

"A plaintiff can show pretext directly, by showing that discrimination more likely

motivated the employer, or indirectly, by showing that the employer's explanation

is unworthy of credence." *Id*. at 641. "To show pretext using circumstantial

evidence, a plaintiff must put forward specific and substantial evidence challenging

the credibility of the employer's motives." *Id*. at 642. Here, the district court gave

summary judgment to UPS on Smith's Title VII discrimination claim based on its

conclusion that, even if Smith could make out a prima facie case for

discrimination, UPS had provided a legitimate, non-pretextual reason for its

_____

[1] Because the facts are known to the parties, we repeat them only as
necessary to explain our decision.

2

decision not to reinstate Smith. We agree. The district court's determination that UPS's reason for not reinstating Smith—namely, that a panel composed of union and UPS representatives reasonably concluded that Smith was the aggressor in a fight with a fellow employee—was legitimate and that Smith did not show that it was a pretext for discrimination.

It is significant for our evaluation that, at his panel-level hearing, Smith did not allege or present evidence that his termination was race-based. Similarly, when complaining about harassment, he did not say it was based on race. And also, when filing his grievance about his termination, he did not suggest discrimination based on race. Nor has he shown any evidence that the union or UPS representatives at his panel-level hearing had or disclosed racial bias. The panel's decision not to reinstate Smith after concluding that Smith was the aggressor was a reasonable or permissible conclusion, even if it could be challenged factually, and there is no evidence that UPS has reinstated any non-African-American employees after they were reasonably deemed to be an aggressor. Because the panel was justified in deciding that Smith was the aggressor based on the evidence before it, Smith cannot show that panel's decision is unworthy of credence or more likely than not motivated by discriminatory animus. The district court correctly granted summary judgment for UPS on the Title VII claim.

**II**

The district court erred, however, in concluding that Smith's claims for negligent supervision and training were preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In his complaint, Smith contends that UPS owed him a duty to supervise its employees properly, to exercise due care to prevent harm to him from its employees, and to train its employees to comply with the law. He claims that UPS breached that duty by, among other things, failing to respond to his complaints of harassment, and that UPS's breach proximately caused him "harm, threat of harm, fear, anxiety, harassment and retaliation." Because these state law claims concern only common law duties and involve conduct that took place before Smith's participation in the union grievance process, they do not directly implicate the collective-bargaining agreement and are not preempted by § 301.

Congress enacted § 301 to ensure that "doctrines of federal labor law uniformly . . . prevail over inconsistent local rules." *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962). Accordingly, "the pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed . . . , nor by parties' efforts to renege on their arbitration

4

promises by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements." *Livadas v. Bradshaw*, 512 U.S. 107, 122–23 (1994) (internal quotation marks and citation omitted). Section 301 "preempts only claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc) (internal quotation marks omitted). A "claim is not preempted so long as it may be litigated without reference to" the collective-bargaining agreement, and preemption is not appropriate where the court must simply "look to" a collective-bargaining agreement "to discern that none of its terms is reasonably in dispute." *Id.* at 690, 692.

Contrary to the district court's conclusion on which its preemption holding was premised, in our view, Smith's negligent training and supervision claims do not require consideration of the applicable collective-bargaining agreement. First, the harm alleged by Smith is not his ultimate termination—the review of which might implicate the collective-bargaining agreement—but rather the harassment, fear, and anxiety that Smith claims to have experienced in the months preceding his termination and that UPS allegedly did not prevent despite Smith's complaints. Second, the UPS employees whose conduct allegedly harmed Smith were the

5

managers who did not respond to Smith's concerns about harassment. Because

UPS managers are not covered by any collective-bargaining agreement, it is not

necessary to refer to such an agreement to assess Smith's negligent supervision and

training claims. Because Smith's fact-intensive state law claims are not preempted,

we reverse and remand for the district court to exercise its discretion in deciding

whether to assess the merits of Smith's state law claims or to "decline jurisdiction

over the state claims and dismiss them without prejudice."[2] *See Wade v. Reg'l*

*Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996).

## III

Federal Rule of Civil Procedure 26(e)(1) requires a party to supplement or

correct its interrogatory responses upon learning that they are incomplete or

incorrect. If a party fails to supplement a response where required, "that party is

not allowed to use that information . . . to supply evidence on a motion, at a

hearing, or at trial, unless the failure . . . is harmless." Fed. R. Civ. P. 37(c)(1).

Smith contends that the district court erred in denying his motion to strike evidence

---

[2] Smith will be able to refile his claims in state court if the district court, on remand, elects to dismiss them for lack of subject matter jurisdiction. *See* Nev. Rev. Stat. § 11.500 ("[I]f an action that is commenced within the applicable period of limitations is dismissed because the court lacked jurisdiction over the subject matter of the action, the action may be recommenced in the court having jurisdiction within: (a) The applicable period of limitations; or (b) Ninety days after the action is dismissed, whichever is later.").

6

that a particular UPS employee received Title VII-related training, information that UPS submitted with its summary judgment motion but had not disclosed in response to Smith's interrogatories. The district court concluded that UPS's failure to supplement its interrogatory responses was harmless because UPS supplied Smith with relevant training guides and policies in its initial disclosures, and Smith, who bears the burden to show a lack of training, did not depose the UPS employee about his training. We hold that the district court did not abuse its discretion in denying Smith's motion to strike on these grounds. *See El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003) (stating standard of review).

## IV

Nor did the district court abuse its discretion in declining to impose sanctions on UPS for its alleged willful spoliation of evidence. *See Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1014 (9th Cir. 2007) (stating standard of review). The district court did not clearly err in finding that UPS lacked a culpable state of mind, a predicate finding to its exercise of inherent authority to impose sanctions. *See id.*; *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992) (observing that a district court may impose sanctions upon a finding of wilfulness, fault, or bad faith on the part of the

7

offending party). UPS was under no duty to maintain the minutes Smith requested. Rather, as the district court found, the minutes are produced and maintained by the union, who simply sends a copy to UPS so the company may review them for accuracy before the minutes are approved at the next month's panel-level meeting. There is therefore no evidence that UPS had a culpable state of mind when it destroyed its copy of the minutes, an action it takes in the usual course.

Moreover, UPS destroyed its evidence before Smith made any allegation that might have alerted UPS to its potential relevance, and "[a] party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (internal quotation marks and emphasis omitted)). That Smith did not seek the allegedly spoliated evidence from the union and that the evidence does not appear to assist Smith's case also support our conclusion that the district court's denial of sanctions was not an abuse of discretion. *See Medical Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806, 825 (9th Cir. 2002) (noting that the availability of other evidence and the plaintiff's failure to pursue it "formed proper bases for the district court's exercise of its discretion" in declining to impose sanctions for spoliation).

Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

*Smith v. United Parcel Service*, No. 10-15563

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

I join parts II, III, and IV of the majority disposition. I dissent from part I, however, because a rational trier of fact could find that UPS's "proffered explanation" for Smith's non-reinstatement "is 'unworthy of credence,'" and that, in light of the company's history of reinstating non-black employees charged with the same infraction as Smith and the harassment he experienced, the primary reason Smith was not reinstated was his race. *Chuang v. Univ. of Cal. Davis Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000).

In three incidents prior to Smith's confrontation with his co-worker, Lemos, the joint UPS-union panel did not reinstate one other black employee, but did reinstate two white employees and two Asian employees who had fought on duty. UPS argues that the cases in which the non-black employees were reinstated were different from Smith's because the employees involved had reconciled prior to the panel hearing, whereas Smith and Lemos had not reconciled. Consequently, UPS suggests, Smith was differently situated and thus could not have been differently treated because of his race. There are two problems with that argument. First, "[w]hether two employees are similarly situated is ordinarily a question of fact." *Beck v. UFCW, Local 99*, 506 F.3d 874, 885 n.5 (9th Cir. 2007). Whether the non-black employees' reconciliation was actually the dispositive factor in their cases, or

whether those employees were not viewed any differently than Smith – apart from their race – is a genuine issue of material fact for a jury to decide. It is not enough to say, as the district court found, that "it was reasonable for the panel to conclude that, given the lack of reconciliation, it could not reinstate both Lemos and [Smith]" the question is whether any rational factfinder could have *disbelieved* this basis for distinguishing the other cases. As that determination rests largely on assessing the credibility of UPS personnel, a rational jury could certainly find for Smith on the question of disparate treatment. Summary judgment was improper under these circumstances.

Second, even if UPS did maintain a genuine and consistent policy of not reinstating an employee who (1) had instigated a fight with a colleague and (2) had not reconciled with that colleague, that would not end the inquiry. It would matter why the employees did not reconcile. If the colleague refused to reconcile because of the degree of harm he suffered or the sincere fear he continued to feel regarding the aggressor-employee, it might be sensible for an employer to deny reinstatement as a result. If the colleague refused to reconcile because of his own racial prejudice, however, the company could not deny reinstatement on that basis, because the employer would, in essence, be adopting the colleague's discriminatory attitude as its own. "It is now widely accepted that a company's

2

desire to cater to the perceived racial preferences of its customers is not a defense under Title VII for treating employees differently based on race." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908 (7th Cir. 2010). A co-worker's racial preference is no different. *Cf.* 29 C.F.R. § 1604.2(a)(2) ("The [Equal Employment Opportunity] Commission will find that the following situations do not warrant the application of the bona fide occupational qualification exception [to the ban on sex discrimination]: . . . (iii) The refusal to hire an individual because of the preferences of *coworkers*, the *employer*, *clients* or *customers* . . . .") (emphasis added). A company cannot refuse to reinstate an employee who does not get along with co-workers when the reason he does not get along is his race.

UPS does not dispute that Lemos refused to reconcile because his primary goal was to ensure that Smith not be reinstated. That fact alone raises suspicions about Lemos's motives. There is additional evidence in the record that would allow a rational finder of fact to conclude that Lemos's animus toward Smith did, in fact, derive from Smith's race: Lemos was a leader of the "Mexican Mafia," a group of Hispanic employees that harassed other employees who were not part of the group; Smith was among those targeted and thought he was singled out for being black, or at least because he was not Hispanic. If racial bias did motivate Lemos not to reconcile, then the company's decision not to reinstate Smith was

3

impermissibly infected by racial discrimination. A jury could reasonably conclude that Lemos refused to resolve his dispute with Smith because of his race, and so UPS's decision not to reinstate Smith because of the ongoing conflict was in fact nothing more than unlawful "bootstrap[ping]" of Lemos's racial preferences into a purportedly legitimate business decision. *See Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1276 (9th Cir. 1981). This question should have gone to a jury as well.

Finally, a rational trier of fact familiar with the Teamsters union could find "unworthy of credence" the suggestion that the panel, on which three Teamsters sat, was legitimately *so* concerned about a shoving match that it upheld the termination of a 20-year employee for his first disciplinary offense. Termination is an extremely harsh result in an employee-discipline grievance process, and a seemingly unlikely one for Teamsters to endorse for an incident as relatively minor as this one. The panel's motives could reasonably be doubted further by the fact that it apparently did not ask Lemos to explain whether or why he was unwilling to reconcile with Smith – an inquiry it surely would have undertaken if reconciliation between employees were so critical a matter. A jury could reasonably conclude that something other than the details of Smith's confrontation and relationship with Lemos – such as race discrimination – underlay the decision not to reinstate him.

For these reasons, I would reverse the district court's grant of summary

4

judgment to UPS on Smith's race discrimination claim.  I respectfully dissent.