LAWRENCE STUBLI, Appellant, *v.* BIG D INTERNATIONAL TRUCKS, INC., and THE BUDD COMPANY, Respondents.

No. 20260

April 30, 1991                                810 P.2d 785

*Bradley & Drendel* and *Thomas Drendel*, Reno, for Appellant.

*Laxalt & Nomura*, Reno, and *Erickson, Thorpe, Swainston & Cobb*, Reno, for Respondents.

310

## OPINION

By the Court, YOUNG, J.:

This is an appeal from an order, entered as a sanction pursuant to NRCP 37, dismissing appellant's complaint due to appellant's failure to preserve evidence. For the reasons expressed below, we affirm.

### FACTS

On June 27, 1984, Appellant Lawrence Stubli, a self-employed truck driver, was involved in a single vehicle accident while driving his tractor-trailer rig on Interstate 80 in Wyoming. The accident occurred when the rig went off the highway into the median and rolled onto its right side. The damaged trailer was subsequently stored at a wrecking yard in Rock Springs, Wyoming.

Stubli's 45-foot refrigerator trailer was manufactured by respondent The Budd Company (Budd) and purchased by Stubli in 1981. Stubli claims that, from the outset, he experienced misalignment problems with the trailer's suspension system. As

an apparent consequence of these problems, one of the suspension system components, the right front "springhanger," eventually separated from the trailer frame. Respondent Big D International Trucks (Big D) of Reno, Nevada, repaired the broken springhanger by welding it back to the trailer frame in December of 1983.

Following the accident, Stubli submitted a claim to his insurer, Northwestern National Insurance Company (Northwestern). The claim was handled by WRG Claims Management (WRG) of Milwaukee, Wisconsin, and investigated by Mark Ingersoll of Idaho Intermountain Claims. During the investigation and pursuant to WRG's instructions, Ingersoll retained a mechanical engineer, Dr. Rudi Limpert, to inspect the trailer wreckage for mechanical defects before it was discarded as salvage.

After examining and photographing the damaged trailer, Limpert submitted the photographs and a detailed report of his findings to Ingersoll on September 20, 1984. In his report, Limpert opined that the right front springhanger had "fractured from the frame," causing the right front dual wheels of the trailer to move backward and to lock up against the right center springhanger, which in turn caused the center springhanger to tear partially from the frame resulting in a similar rearward displacement of the right rear dual wheels. This sequence of events, concluded Limpert, caused the rear of the trailer to steer to the right, the tractor to steer to the left, and thus forced the entire rig into the median where it crashed. Limpert further concluded that the cause of this catastrophe was an inadequate weld repair job by Big D.

After receiving this information, Northwestern retained Ohio attorney John McCarthy, who was also representing Stubli's interests in the matter, to handle its subrogation claim. In an October 30, 1984 letter confirming McCarthy's retention, a Northwestern representative, J. C. Partleton, informed McCarthy that the trailer wreckage was in storage, that it would remain in storage until "all interested parties have had a chance to examine it," and that Budd and Big D should be notified that Northwestern planned to assert a subrogation claim. In a January 18, 1985 letter to McCarthy, Northwestern Claim Supervisor Harold Gross advised McCarthy that fees for storing the trailer would soon surpass the trailer's salvage value. Thus, Gross requested that McCarthy expedite any additional inspections and inquired whether "there would be any harm in inviting [Budd] to inspect" the trailer.

Neither Budd nor Big D received such an invitation to inspect the wreckage. Instead, McCarthy instructed Limpert by letter dated February 6, 1985, to go to the storage area and "disengage the bogie (sliding axle assembly) and transport the same to your

storage facility." In turn Limpert instructed his assistant, a Mr. Andrews, to "go out and get the failed part." Andrews then had a storage yard worker sever the right front springhanger, and that portion of the trailer frame from which the front springhanger had separated, from the remainder of the trailer. By letter dated February 18, 1985, Limpert advised McCarthy that the "slider assembly and associated parts" had been removed and placed in Limpert's storage facility.

On February 22, 1985, McCarthy referred Stubli's case to counsel in Reno, Nevada. On March 8, 1985, McCarthy informed Ingersoll that Limpert had removed "the basic assembly that we're concerned with as it relates to the development of a product liability defect," and advised Ingersoll that it was no longer necessary to store the trailer. As a result, the trailer wreckage, except for the front springhanger and frame section in Limpert's custody, was discarded as salvage.

On May 14, 1985, Stubli filed a complaint against Big D in Washoe County, Nevada. On April 18, 1986, Stubli filed an amended complaint alleging that his damages to person and property were caused by Big D's inadequately performed weld repair, and Budd's defectively designed trailer. Despite discovery efforts by Big D as early as September 1985, Limpert's report and photographs were not provided to respondents until August of 1988. At that time, respondents also learned that the trailer wreckage, less those portions in Limbert's custody, had been discarded.

Big D thereafter filed the instant motion to dismiss pursuant to NRCP 37. Budd joined in the motion. Attached to the motion were the affidavits of two defense experts. Those experts claimed that, rather than failing prior to the crash, the front springhanger may well have fractured as a result of the crash impact. The experts further asserted that appellant's failure to preserve the trailer, specifically the partially torn center springhanger and corresponding frame section, tires, axle bearings and torque rod bushings, had made it impossible for respondents to establish their defense theory. Respondents' motion was submitted and on July 6, 1989, the district court entered an order granting the motion. This appeal followed.

## DISCUSSION

Selection of a particular sanction for discovery abuses under NRCP 37 is generally a matter committed to the sound discretion of the district court. *See, e.g.,* Fire Ins. Exchange v. Zenith Radio Corp., 103 Nev. 648, 649, 747 P.2d 911, 912 (1987);

Kelly Broadcasting v. Sovereign Broadcast, 96 Nev. 188, 192, 606 P.2d 1089, 1092 (1980). However, we have recently held that a somewhat heightened standard of review shall apply where the sanction is one of dismissal with prejudice. Young v. Johnny Ribiero Building, 106 Nev. 88, 787 P.2d 777 (1990).

In *Young,* we held that the discovery sanction of dismissal must be just and must relate to the claims at issue in the discovery order which has been violated, that dismissal should be imposed only after careful consideration of all relevant factors, and that the order of dismissal must be supported by an express, careful and preferably written explanation of the district court's analysis. *Young,* 106 Nev. at 92-93, 787 P.2d at 779-80. We also set forth a non-exhaustive list of factors which a court may properly consider in deciding whether dismissal is an appropriate sanction. Those factors include: (1) the degree of willfulness of the offending party; (2) the extent to which the non-offending party would be prejudiced by a lesser sanction; (3) the severity of the sanction of dismissal relative to the severity of the discovery abuse; (4) whether any evidence has been irreparably lost; (5) the policy favoring adjudication on the merits; (6) whether sanctions unfairly operate to penalize a party for the misconduct of his or her attorney; and (7) the need to deter both the parties and future litigants from similar abuses. *Young,* 106 Nev. at 93, 787 P.2d at 780.

In the instant case, dismissal of Stubli's action was a proper response to the destruction of evidence and the requirements of *Young* have been satisfied. First, Stubli's claims all revolve around the allegedly defective design and repair of the trailer's suspension system, the bulk of which was discarded by Stubli just prior to the time that Stubli filed his initial complaint. Thus, the dismissal order is clearly related to the discovery abuse at issue in this case. Although no court order compelling discovery had been entered and thus violated by Stubli, we note that the destruction of evidence occurred prior to filing an action and the commencement of discovery. Such timing was due to actions taken by Stubli's counsel and expert and cannot be relied upon by Stubli to preclude the imposition of discovery sanctions pursuant to NRCP 37. As the Illinois Appellate Court reasoned when faced with an almost identical set of circumstances:

> [A]lthough it is correct that the plaintiffs did not violate court orders, the fact remains that the furnace was destroyed by plaintiffs at Western State's suggestion. The plaintiffs are

not free to destroy crucial evidence simply because a court order was not issued to preserve the evidence. Further, the furnace was destroyed by the plaintiffs after their expert had examined it and before the suit was filed, thus, the court could not have issued a preservation order.

Graves v. Daley, 526 N.E.2d 679, 681 (Ill.App.Ct. 1988) (dismissing lawsuit as sanction for the destruction of evidence).

Next, the district court's nine-page order of dismissal evidences a thorough analysis of the the relevant factors and provides ample support for the sanction imposed. The district court noted that the loss of evidence in this case was wholly due to willful actions taken by Stubli's Ohio counsel and Stubli's expert, prior to any involvement in this case by respondents. The court further noted that a plethora of expert testimony supports respondents' contention that examination of the lost evidence would be necessary to prove or disprove respondents' theory that the crash and damage to the trailer were caused by driver error rather than a defective design or repair, and that imposition of a lesser sanction such as excluding Limpert's testimony while allowing appellant to proceed on the basis of circumstantial evidence would be insufficient to cure the prejudice sustained by respondents.

We agree with the district court's analysis. Relevant evidence in this case has been irreparably lost due to the willful actions of Stubli's agents. A lesser sanction, short of deeming respondents' theory admitted by the offending party and granting summary judgment in respondents' favor, will not compensate for that loss. Although dismissal precludes adjudication on the merits and penalizes Stubli for the misconduct of his attorney and expert, such consequences are unavoidable and are outweighed by the need to remedy the unfair litigation practices employed in this case, and the benefit of deterring similar abuses in future cases.

Accordingly, we conclude that the sanction imposed in this case was warranted and was no more severe than the discovery abuse committed by Stubli's agents. We therefore affirm the decision of the district court.

STEFFEN, J., and RECANZONE, D. J., concur.[1]

ROSE, J., dissenting, with whom SPRINGER, J., agrees:

The dismissal of Stubli's complaint constitutes a sanction

---

[1]THE HONORABLE JOHN MOWBRAY, Chief Justice, having voluntarily recused himself, the Honorable Mario G. Recanzone, Judge of the Third Judicial District Court, was designated by the Governor to participate in this matter on the briefs and recording of oral arguments. Nev. Const. art. 6, § 4.

which is unnecessarily harsh. An attorney and expert witness employed by Stubli's insurance company and also representing Stubli made a decision before litigation commenced to destroy portions of the trailer. They believed those portions were not essential to determine the cause of the accident. This decision was not willfully made to impede any potential defendants; the defense experts have not been prevented from forming an opinion as to the cause of the accident, and a less severe sanction would better serve the interests of justice. For these reasons, I dissent.

The dispute between the parties concerns how the accident happened. The highway patrol believed Stubli fell asleep at the wheel and his truck drifted into the median. Stubli's experts conclude that a weld repair was defective or a fatigue fracture developed near the weld. The defense experts opine that the trailer was overloaded and this damaged the springhangers and associated parts, thus causing the crash. Stubli's experts contend that all trailer parts necessary for accident reconstruction were preserved. The defense experts believe sufficient evidence exists to form an opinion as to the cause of the accident, but that the destroyed section might be helpful to bolster their opinion and refute the speculation of one of Stubli's experts. The respondents did not assert that the destroyed trailer was necessary to their defense until the filing of the motion to dismiss in question, almost two years after their experts inspected the preserved tractor parts.

Against this factual background, we must review the factors set forth in the *Young* case to determine whether the extreme sanction of dismissing the complaint was warranted. *See* Young v. Johnny Ribeiro Building, 106 Nev. 88, 787 P.2d 777 (1990). The refrigeration unit and axles of the trailer were destroyed because Stubli's attorney and expert had determined that a defective weld repair caused the accident and that preserving more than the sliding axle assembly was unnecessary because "the evidence collected plus what we preserved is all the data that [a reasonable engineer] needs to determine what happened." There were hundreds of photographs taken of the discarded portions of the trailer that were made available to the respondents. There is no indication in the record that the destruction of the trailer was done in bad faith to frustrate any of the potential defendants and it was not in violation of any court order because suit had not yet been filed. This is not a willful destruction of evidence.

Two other *Young* factors that weigh in Stubli's favor are the considerations of whether the non-offending party would be prejudiced by a lesser sanction and whether a less severe sanction would be feasible. The defense experts have not been prevented

from forming and advocating an opinion as to the cause of the accident, but may be prevented only from buttressing their conclusion that the accident happened because of overloading. Even the district court recognized this when it stated in its order that the jettisoned portion of the trailer "may have provided defendants with evidence supporting their theory of the case." Therefore, it is doubtful whether the evidence in question would have been of any assistance to either party had it not been destroyed.

The district court could have permitted the case to go to trial and then instructed the jury that if it found that any destroyed evidence would be significant in reaching a conclusion as to the cause of the accident, it should infer that the evidence destroyed would have disclosed facts adverse to the party who destroyed it. Additionally, the court could have prevented Stubli's expert from testifying about his observations of the refrigeration unit before it was discarded. These remedial sanctions would have enabled the defense to present their theory of the case and suffer only minimal prejudice.

Another factor to be considered is whether sanctions unfairly operate to penalize a party for the misconduct of his or her attorney. The complaint's dismissal does just that; it penalizes Stubli for the action taken by an expert and attorney representing both Stubli and his insurance company seeking subrogation. It was Stubli's insurance company that continually complained that the costs of storing the entire trailer were mounting. The impetus to destroy the remainder of the trailer came not from Stubli, but from his insurer, who presumably was paying and directing the attorney and expert.

Finally, public policy favors adjudication on the merits whenever possible. Hotel Last Frontier v. Frontier Prop., 79 Nev. 150, 155, 380 P.2d 293, 295 (1963). The destroyed parts of the trailer were not essential to the trial of this case and remedial sanctions were feasible. Imposition of the extreme sanction of dismissal with prejudice was an abuse of discretion by the district court. For these reasons, I respectfully dissent from the majority opinion.