GNLV CORPORATION, DBA THE GOLDEN NUGGET HOTEL & CASINO, AND CHET SNELLBACK AND KAREN SNELLBACK, APPELLANTS, v. SERVICE CONTROL CORPORATION, DBA WESTERN LINEN SERVICE, RESPONDENT.

No. 24766

July 27, 1995                                        900 P.2d 323

*Carolyn Ellsworth,* Las Vegas; *Beckley, Singleton, Jemison & List* and *Daniel F. Polsenberg,* Las Vegas, for Appellant GNLV.

*Jennings, Strouss & Salmon* and *Gary L. Stuart,* Phoenix, Arizona; *Dawson & Associates,* Las Vegas, for Appellants Snellback.

*Thorndal, Backus, Armstrong & Balkenbush* and *Paul F. Eisenger* and *Carrie McCrea,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

### FACTS

Appellant Karen Snellback slipped and fell in the bathroom of her room at the Golden Nugget Hotel & Casino ("the Golden Nugget") in Las Vegas. Snellback claimed that the bath mat slipped out from underneath her as she stepped out of the bathtub. As a result of the fall, Snellback suffered a fracture in her left shoulder, pain in her right hand and wrist and aggravation of her arthritis, and loss of use of her left arm. Directly after the fall, Snellback examined the bath mat and discovered that the rubber backing of the bath mat was almost entirely worn off.

The Golden Nugget took possession of the bath mat and allegedly placed it in the locked evidence room in their risk management office. Two Golden Nugget employees inspected the mat at the time of the accident, and approximately six months later, in November, 1990, prepared written statements describing its condition. One employee stated that "over ninety percent of the anti-

slip backing was worn away" and that "[t]here were just a few bits and pieces of the backing left on the mat." The other employee stated that "virtually all of the rubber backing had been melted off. The small patches of rubber that remained had also been melted. As the result the bath mat wasn't slip-resistant." Both employees later prepared sworn affidavits confirming what they had reported in their previous written statements. One of the Golden Nugget's representatives informed Snellback that the rubber backing of the bath mat had apparently been stripped away by the cleaning process utilized by Service Control Corporation ("Western Linen"). At some point prior to the November 1990 written statements of the Golden Nugget employees, the bath mat was discovered missing.

On February 4, 1991, the Golden Nugget supplied its employees' statements to Karen Snellback. Snellback states that the loss of the bath mat was the result of the Golden Nugget's negligence. Western Linen, under contract with the Golden Nugget since 1988 to provide linen, including bath mats, in serviceable and sanitary condition for use in the hotel's rooms, concedes that "the Golden Nugget did not ostensibly engage in the willful destruction of the evidence." Included in the Golden Nugget's contract with Western Linen was a provision whereby Western Linen would hold the Golden Nugget harmless from damages resulting from claims or causes of action for personal injuries or property damage arising out of the performance of the contract due to Western Linen's negligence or that of its employees.[1]

On April 23, 1992, Karen Snellback and her husband Chet filed a complaint against Western Linen and the Golden Nugget, alleging, *inter alia,* that Western Linen was negligent for supplying a defective bath mat to the Golden Nugget. On August 3, 1992, Western Linen answered the Snellbacks' complaint and filed a cross-claim against the Golden Nugget for indemnification and contribution. The cross-claim was subsequently dismissed with prejudice. On September 23, 1992, the Golden Nugget answered both the Snellbacks' complaint and Western Linen's cross-claim, and filed a cross-claim against Western Linen for breach of a contractual duty to provide proper bath mats, and to enforce the contractual right of indemnity.

On March 8, 1993, Western Linen moved for summary judgment against the Golden Nugget and the Snellbacks, arguing that it was entitled to summary judgment due to the Golden Nugget's

---

[1]The contract also apparently provided that Western Linen would deliver textiles for immediate use in a serviceable and sanitary condition, that Western Linen would replace textiles which were not reasonably useable, and that Western Linen would provide an on-site room linen distribution and inventory management program.

failure to preserve critical evidence, namely, the bath mat. On April 15, 1993, Western Linen filed a motion to dismiss itself as a party to the lawsuit. The district court, after concluding that an evidentiary hearing was unwarranted, dismissed Western Linen as a party to the action pursuant to Nevada Rule of Civil Procedure 37(b),[2] concluding that Western Linen was "irreparably prejudiced" by the loss of the bath mat, and awarded $3,000 in attorney fees to Western Linen against the Golden Nugget, "the amount directly attributable to the matter involving the loss of the mat." Both the Snellbacks and the Golden Nugget appeal.

## DISCUSSION

On appeal, the Snellbacks and the Golden Nugget argue that the district court erred in dismissing Western Linen as a party. We agree that the sanction of dismissal was too harsh in this case.

Generally, sanctions may only be imposed where there has been willful noncompliance with a court order or where the adversary process has been halted by the actions of the unresponsive party. Fire Ins. Exchange v. Zenith Radio Corp., 103 Nev. 648, 651, 747 P.2d 911, 913 (1987). "[E]ven where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." Id. at 651, 747 P.2d at 914.

Although discovery sanctions are within the power of the district court and this court will not reverse the particular sanctions imposed absent a showing of abuse of discretion, if the sanction imposed is that of dismissal with prejudice, a somewhat heightened standard of review applies. Nevada Power v. Fluor

---

[2]This provision provides, in pertinent part:

**RULE 37. REFUSAL TO MAKE DISCOVERY: SANCTIONS.**

. . . .

**(b) Failure to Comply With Order.**

. . . .

(2) Sanctions—Party. If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just. . . .

Although there was no court order to produce the bath mat, this court has held that Rule 37(b) applies where one of the parties destroys evidence, even when no court order was entered. For example, this court has stated, " '[t]he plaintiffs are not free to destroy crucial evidence simply because a court order was not issued to preserve the evidence.' " Stubli v. Big D International Trucks, 107 Nev. 309, 313-14, 810 P.2d 785, 788 (1991) (quoting Graves v. Daley, 526 N.E.2d 679, 681 (Ill. App. Ct. 1988)).

Illinois, 108 Nev. 638, 644, 837 P.2d 1354, 1358-59 (1992); Young v. Johnny Ribeiro Building, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990). Fundamental notions of fairness and due process require that discovery sanctions be just and that sanctions relate to the specific conduct at issue. *Young*, 106 Nev. at 92, 787 P.2d at 779-80. In addition, while dismissal need not be preceded by other less severe sanctions, it should only be imposed after thoughtful consideration of all the factors involved in a particular case. *Id.* at 92, 787 P.2d at 780. The dismissal of a case, based upon a discovery abuse such as the destruction or loss of evidence, "should be used only in extreme situations; if less drastic sanctions are available, they should be utilized." *Nevada Power*, 108 Nev. at 645, 837 P.2d at 1359. We note that NRCP 37(b) offers a panoply of sanctions.[3]

In *Young*, we set out eight factors that a court may consider before ordering dismissal with prejudice as a discovery sanction: (1) the degree of willfulness of the offending party; (2) the extent to which the non-offending party would be prejudiced by a lesser sanction; (3) the severity of dismissal relative to the severity of the abusive conduct; (4) whether evidence has been irreparably lost; (5) the feasibility and fairness of alternative and less severe sanctions, such as an order deeming facts relating to improperly lost or destroyed evidence to be admitted by the offending party; (6) the policy favoring adjudication on the merits; (7) whether sanctions unfairly operate to penalize a party for the misconduct of his or her attorney; and (8) the need to deter both the parties and future litigants from similar abuses. *Young*, 106 Nev. at 93, 787 P.2d at 780.

---

[3]NRCP 37(b)(2) authorizes the following sanctions "among others":

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders . . . .

. . . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Applying the *Young* factors to the instant case, we conclude that the district court erred in dismissing Western Linen as a party to the Snellbacks' lawsuit and from the Golden Nugget's cross-claim. First, there is no evidence that the Golden Nugget intentionally or willfully destroyed the bath mat. There was clearly no intent or fault on the part of the Snellbacks concerning the loss of the bath mat. Second, a lesser sanction could have been imposed without substantial prejudice to Western Linen. For example, the Golden Nugget's cross-claim for indemnification could have been dismissed, which would punish the Golden Nugget for losing the mat without detrimentally affecting the Snellbacks. Third, the severity of dismissal as to the Snellbacks' claim is extremely harsh since the Snellbacks were entirely uninvolved where the loss of the mat is concerned. Fourth and fifth, while the mat is lost, evidence pertaining to the mat is not lost. The statements of the Golden Nugget employees regarding the lost mat may be admitted. Sixth, the Snellbacks are entitled to adjudication on the merits. If Western Linen is dismissed as a party, the Snellbacks may only continue their lawsuit against the Golden Nugget, but the Golden Nugget may be able to avoid liability completely or partially if it successfully shows that it was not responsible for the condition of the mats and that Western Linen was at fault. Therefore, dismissal of Western Linen might leave the Snellbacks without a remedy or with an incomplete remedy. The seventh factor has no application in this analysis. Eighth, the Snellbacks have not engaged in abusive conduct; therefore, there are no abuses to deter. Neither party is alleging that the Golden Nugget engaged in abusive conduct by willfully destroying the bath mat. They attribute the loss to negligence.

The district court erred in dismissing Western Linen as a party to the Snellbacks' lawsuit because the party to whom sanctions are applied is usually the party actually responsible for the loss or destruction of the evidence. *See Nevada Power*, 108 Nev. 638, 837 P.2d 1354 (1992).[4] The Snellbacks were in no way responsible for the disappearance of the bath mat. The reasons that the district court erred in dismissing Western Linen from the Golden Nugget's cross-claim are less compelling since the Golden Nug-

---

[4]*See also* Stubli v. Big D International Trucks, 107 Nev. 309, 810 P.2d 785 (1991) (appellants destroyed trailer, the subject of a products liability and negligence repair action); Young v. Johnny Ribeiro Building, 106 Nev. 88, 787 P.2d 777 (1990) (appellant willfully fabricated diary notations pertinent to suit based on breach of fiduciary duty and contract); Fire Ins. Exchange v. Zenith Radio Corp., 103 Nev. 648, 747 P.2d 911 (1987) (appellants threw away remains of destroyed television, subject of subrogation suit).

get, after all, was responsible for safekeeping the bath mat. Nevertheless, we conclude that a sanction less severe than dismissal was appropriate in this case pursuant to the *Young* factors.

The bath mat is not necessary to Western Linen's defense. Both Karen Snellback and the Golden Nugget employees can testify to its condition. Admittedly the employees' affidavits were prepared three years after they observed the bath mat, but those affidavits were simply a reiteration of the employees' written statements, which they made six months after Karen Snellback's accident. Western Linen would have an opportunity to cross-examine these witnesses to ferret out bias. Western Linen could also attempt to use the employees' statements against the Golden Nugget. For example, if the bath mat were obviously defective, the Golden Nugget might be liable for negligently placing it or leaving it in the Snellbacks' bathroom. If there is no evidence that the mat was defective, the Golden Nugget, like Western Linen, might not be liable to the Snellbacks since the fall might have been her fault.

For the reasons set out above, we therefore reverse the order of the district court dismissing Western Linen from both the Snellbacks' claim and the Golden Nugget's cross-claim and awarding attorney fees to Western Linen.[5]

---

[5]The Honorable Robert E. Rose, Justice, voluntarily recused himself from participation in the decision of this appeal.