Maupin, J.,
with whom Becker, J., agrees, concurring in part and dissenting in part:
The majority opinion today addresses a myriad of undecided issues concerning tort litigation in Nevada. These include duties of a potential defendant to preserve evidence, the scope of expert testimony concerning preservation issues, the scope of the doctrine of res ipsa loquitur, whether Nevada recognizes the concept of hedo-nic damages, whether expert testimony is admissible in aid of a claim for hedonic damages, and the extent to which defendants in different scenarios are entitled to equitable offsets for pretrial settlements. I agree that expert evidence is admissible on questions of evidence spoliation, that general damage awards may include hedo-nic damages for conscious loss of enjoyment of life, that expert testimony may assist the fact-finder in resolving hedonic damage claims, and that defendants are entitled to equitable offsets in negligence actions regardless of whether the settlement monies are paid pursuant to an arbitration agreement and regardless of whether a defendant at trial argues that the settling defendant was at fault. I conclude, however, that the district court erred in its sanction instruction concerning preservation of evidence and in its application of the doctrine of res ipsa loquitur. In my view, these two errors require reversal and remand to the district court for retrial.

DISCUSSION

In light of Sunrise’s failure to preserve either the Narkomed II anesthesia machine or records that would enable Mr. Banks’s attorneys to trace the machine for testing, the district court gave the following instruction:
Sunrise Hospital had a duty to identify all of the anesthesia equipment and monitors which were used in the Banks surgery. Defendant Sunrise failed in this duty and because of its failure, no independent review or inspection of the equipment could ever be done. You may infer that had the equipment been preserved and tested that it would have been found to be not operating properly.
In this instruction, the district court applied an absolute pre-litigation duty upon a potential defendant to preserve evidence. This action unfairly and retrospectively imposed a duty to preserve evidence at a time many months before the plaintiff first generated even so much as a remote reference to the evidence and years be *849 fore the plaintiff took formal action against the defendant in connection with it. Additionally, the instruction found as a matter of law that the duty had been breached.
The case authority which the majority relies upon imposes sanctions for destruction or loss of evidence where a potential plaintiff discarded critical evidence prior to filing suit and then proceeded with the action.[1] Because a potential plaintiff has absolute control over whether to file a lawsuit and which theories of recovery he or she chooses to allege, it is perfectly appropriate to impose a duty to preserve evidence and impose sanctions in connection with its loss or destruction. However, a broad duty to preserve becomes problematic when applied to a potential defendant who may either never be sued or be sued upon a particular theory.
In a perfect world, a hospital or physician should investigate all possible reasons for a catastrophic surgical result, and any person involved in a catastrophic event would be wise to undertake some sort of investigation and preserve evidence to guard against the possibility of impending litigation. But the majority applies a wide ranging preservation duty under a very discrete set of circumstances. In my view, we should not impose a presuit duty upon a defendant unless there is evidence that supports an inference that the destruction was calculated to gain a competitive advantage in the event of litigation.[2] Here, Banks never claimed that Sunrise willfully destroyed evidence to avoid exposure to this case, and the claim that the machine was implicated in Mr. Bank’s profound neurological damage did not surface until well after the machine was turned over to a purchaser under an agreement that predated the surgery.
Having said this, the jury should have been allowed to hear evidence concerning the possibilities if testing had been available and been instructed on permissible inferences from the loss of the machine. However, the district court should not have instructed the jury that an absolute duty existed to preserve evidence and that Sunrise breached this duty, particularly when there was no indication that the machine was implicated until Mr. Banks filed his initial complaint some seven months after the disposal of the machine, the original complaint only referred to the machine in connection with allegations against fictitiously named defendants, *850 the anesthesiologist renounced any difficulty with the machine, the defendant disposed of the equipment pursuant to an agreement that predated the surgery, and Mr. Banks failed to allege any claims against Sunrise concerning the machine until some four years after the fact.
The majority imposes a duty to preserve evidence, which a potential defendant knows or should know may be relevant to an un-filed action. This standard, in its broad application, forces potential parties to anticipate or speculate as to the mere prospect of a particular type of suit, and likewise imposes sanctions for a failure to do so. While this case is marked by a compelling and tragic set of circumstances, this is not the way to provide a just adjudication of Mr. Banks’s claims against the hospital.

Res ipsa loquitur

In my view, this is also not a res ipsa loquitur case. NRS 41A.100 requires that medical malpractice claims be supported by expert opinion testimony. Such evidence, however, is unnecessary when the claimant offers some evidence of one or more of the circumstances enumerated in NRS 41A.100(l)(a) through (e), which embody former res ipsa loquitur principles. The majority concludes that the district court properly instructed the jury under NRS 41A.100(l)(d). Paragraph (d) forgives the expert testimony requirement when the injury occurs “during the course of treatment to a part of the body not directly involved in the treatment or proximate thereto.” The majority embraces this provision, reasoning that Mr. Banks’s brain was not proximately or directly related to his rotator cuff surgery. I respectfully disagree.
To explain, the damage claim in this case was based upon profound and irreversible brain injury secondary to complications of general anesthesia. The use of general anesthesia, i. e., the sedation of the central nervous system, was part and parcel of the surgical treatment of the patient. Because sedation of the central nervous system constitutes treatment directly involving the brain, NRS 41 A. 100(l)(d) is not implicated.

CONCLUSION

In my view, the district court erred in the construct of its spoliation instruction and in its res ipsa loquitur instructions under NRS 41A.100(l)(d). Accordingly, while I agree with the majority in all other respects, I would reverse and remand this matter for retrial.

See Fire Ins. Exchange v. Zenith Radio Corp., 103 Nev. 648, 651, 747 P.2d 911, 914 (1987). Although Fire Ins. Exchange embraced a general duty to preserve relevant evidence that would apply to any party on notice of litigation, the decision did not flush out public policy considerations concerning when a defendant has such a duty.

See Stubli v. Big D International Trucks, 107 Nev. 309, 810 P.2d 785 (1991) (Rose, J., dissenting) (concluding that loss of evidence was not entirely willful and that sanction of dismissal was too harsh).