136 Nev., Advance Opinion *72*

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MDB TRUCKING, LLC,<br>Appellant,<br>vs.<br>VERSA PRODUCTS COMPANY, INC.,<br>Respondent. | No. 75022 |
| MDB TRUCKING, LLC,<br>Appellant,<br>vs.<br>VERSA PRODUCTS COMPANY, INC.,<br>Respondent. | No. 75319 |
| MDB TRUCKING, LLC,<br>Appellant,<br>vs.<br>VERSA PRODUCTS COMPANY, INC.,<br>Respondent. | No. 75321 |
| MDB TRUCKING, LLC,<br>Appellant/Cross-Respondent,<br>vs.<br>VERSA PRODUCTS COMPANY, INC.,<br>Respondent/Cross-Appellant. | No. 76395 |
| MDB TRUCKING, LLC,<br>Appellant/Cross-Respondent,<br>vs.<br>VERSA PRODUCTS COMPANY, INC.,<br>Respondent/Cross-Appellant. | No. 76396 |
| MDB TRUCKING, LLC,<br>Appellant/Cross-Respondent,<br>vs.<br>VERSA PRODUCTS COMPANY, INC.,<br>Respondent/Cross-Appellant. | No. 76397 |

FILED

NOV 05 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Consolidated appeals from district court orders dismissing complaints in tort actions (Docket Nos. 75022, 75319, 75321) and

SUPREME COURT
OF
NEVADA

(O) 1947A

20-40274

consolidated appeals and cross-appeals from post-judgment orders denying a request for attorney fees and partially granting a request for costs (Docket Nos. 76395, 76396, 76397). Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

*Reversed and remanded (Docket Nos. 75022, 75319, 75321); vacated (Docket Nos. 76395, 76396, 76397).*

Clark Hill PLLC and Nicholas M. Wieczorek and Jeremy J. Thompson, Las Vegas; Fox Rothschild LLP and Colleen E. McCarty, Las Vegas, for Appellant/Cross-Respondent.

Lewis Brisbois Bisgaard & Smith LLP and Josh C. Aicklen, Jeffrey D. Olster, David B. Avakian, and Paige S. Shreve, Las Vegas, for Respondent/Cross-Appellant.

BEFORE PICKERING, C.J., PARRAGUIRRE and CADISH, JJ.

## OPINION

By the Court, PICKERING, C.J.:

The district court imposed case-terminating sanctions on appellant MDB Trucking, LLC, for spoliation of evidence. MDB urges that the law does not support this harshest of civil litigation sanctions because: (1) MDB discarded the evidence as irrelevant, not to gain an unfair litigation advantage over respondent Versa Products Company; (2) the evidence is collateral, such that its loss did not materially prejudice Versa; and (3) the district court failed to adequately consider the fairness and feasibility of alternative, less severe sanctions. We agree with MDB that

the record does not support the imposition of case-terminating sanctions and therefore reverse and remand.

I.

A.

Appellant MDB is a commercial trucking company based in Sparks, Nevada. Its drivers transport rock, gravel, and other materials using 18-wheel tractors hauling up to three belly-dump trailers. The tractor/trailer rigs incorporate solenoid valves that control the hydraulic pressure used to open and close the trailer dump gates. Respondent Versa manufactures the dump gate valves.

A year before the incident giving rise to this suit, MDB driver Daniel Koski experienced twice in one week uncommanded activations of the dump gate in his rig's third trailer, causing it to open and unexpectedly dump its load. To prevent a recurrence, MDB mechanics replaced the rig's Versa valve, rewired the control circuit for its dump gate system, and added a master switch in the cab of the truck. MDB made these changes to isolate the electrical circuit for the dump controls from the other electrical systems on the tractor/trailer rig. The objective was to ensure that the Versa valve received no electric current unless the driver flipped both the master switch and the individual trailer switch to the "on" position after lifting the switches' plastic safety covers.

On July 7, 2014, Koski again experienced an uncommanded activation of one of his rig's dump gates. He was driving west on Interstate 80 outside Reno near mile marker 39 when the gate on the third trailer opened, dumping its load of gravel. Both the master and the trailer switches were in the "off" position. The release of gravel created chaos and caused

several collisions, damaging vehicles and injuring several of their occupants.

That same day, a second MDB tractor/trailer rig likewise had a dump gate open unexpectedly, releasing the load of sand it was carrying. This incident also occurred on Interstate 80 near mile marker 42, about ten minutes before and three miles away from the Koski rig's gravel dump. Like Koski, the driver did not activate the dump gate. There were no accidents or injuries associated with this spill.

Anticipating litigation, MDB retained experts to investigate the July 7, 2014 incidents. They found no vehicle issues but determined that the valve system had design defects and lacked safeguards that later versions of the valve incorporated. They also determined that the Versa valves were susceptible to uncommanded activation when exposed to external electromagnetic fields.

Immediately following the July 7, 2014 incidents, MDB removed its belly dump tractor/trailer rigs from the road. Its mechanics manufactured and installed a pin lock system, so the gates could not open unless a person first physically removed the pin. MDB then put the tractor/trailer rigs, including Koski's, back into service.

Over the course of the next year and before any lawsuits were filed, MDB's mechanics performed routine maintenance on Koski's rig. The mechanics replaced, at various times, a plug, two sockets, and a damaged cord that were part of the electrical circuit controlling the Versa valve. They also replaced a second cord associated with the electrical circuit controlling the rig's lights and antilock brake system. Believing them irrelevant, MDB's mechanics discarded the plug, sockets, and cords they replaced.

### B.

Eight plaintiffs filed three separate lawsuits against MDB and Versa, which the court consolidated for discovery purposes. MDB cross-claimed against Versa for contribution. In its cross-claims, MDB alleged that the unreasonably dangerous and defective design of the Versa valve caused the Koski rig's uncommanded gravel dump on Interstate 80 and the collisions that followed. During discovery, Versa's experts inspected Koski's tractor/trailer rig, including its Versa valve, switches, and electrical systems.

After several years of litigation, MDB mediated a global settlement with the plaintiffs, who assigned their claims against Versa to MDB. About two weeks later, Versa filed the motion for sanctions underlying this appeal, in which it asked the district court to dismiss MDB's claim with prejudice for having spoliated evidence. Versa did not fault MDB for putting the tractor/trailer back into service. But it argued that its theory of defense was that an electrical malfunction caused the valve to open and that, without inspecting the discarded parts, it could not establish that claim. MDB responded that the repairs were routine and the replaced parts irrelevant, so sanctions were unwarranted. Alternatively, MDB argued that Versa was entitled, at most, to a permissive adverse inference instruction.

### C.

The district court convened an evidentiary hearing on Versa's motion. Versa called MDB's maintenance director and its lead mechanic adversely. The MDB company witnesses testified (and illustrated their testimony with photographs showing) that the tractor/trailer rig had two main cords: a 4-way cord and a 7-way cord extending from the tractor to the



trailers, yoked together with zip ties. The 4-way cord controlled the trailers' dump gates, and the 7-way cord controlled the rig's lights, antilock brakes, and other electrical systems. While electrical current continuously ran through the 7-way cord, the system did not allow any electrical current to run through the 4-way cord unless the driver manually flipped the master-dump and trailer switches to the "on" position. Work orders indicated that, over the course of the year following the accident, MDB, at separate times, replaced the 4-way cord and the 7-way cord leading from the tractor to the first trailer, as well as one of the plugs on the 4-way cord and two sockets. These were routine repairs. The mechanic threw away the replaced parts and did not remember why they needed replacing. Both MDB witnesses acknowledged that cords can abrade due to wear and tear.

Versa called Garrick Mitchell, a mechanical engineer, as its expert. Mitchell testified that he needed to inspect the discarded parts to determine whether an electrical malfunction caused the dump gate to open. Mitchell hypothesized that the coverings on both the 4-way cord and the 7-way cord might have abraded to the point where current running through a 7-way cord wire made contact with a similarly exposed wire in the 4-way cord. If this occurred, he testified it could have sent a current through the 4-way cord, activating the Versa valve and causing the dump gate to open.

MDB called two experts, both of whom disagreed with Mitchell. MDB's principal expert, David Bosch, testified that the 7-way cord could not provide electrical current to the 4-way cord. The cords' coatings are abrasion resistant; inside the coating are four layers of insulation. The coating and insulation layers would have to be worn through on both cords for a wire from the 7-way cord to contact a 4-way cord wire. Even accepting this as possible, no completed circuit for an electrical current could reach

the trailer's dump gate valve unless Koski had activated the double-pole master switch in the truck's cab, which he denied. Bosch opined that there was a "nearly zero" percent chance the valve activated the way Mitchell hypothesized. Bosch is a forensic engineer with degrees in mechanical, materials, and science engineering. MDB also called an electrical engineer, who agreed with Bosch.

At the end of the hearing, the court vacated the then-imminent trial date and announced that it would dismiss MDB's claims with prejudice. A written order followed, in which the district court found—as Versa conceded at the hearing—that MDB did not intend to harm Versa when its mechanics discarded the plug, sockets, and cords. Nonetheless, the court concluded that MDB acted "willfully," as required for case-terminating sanctions, because it did not lose or misplace the parts but threw them away. The district court questioned Versa's defense theory and deemed MDB's evidence more compelling. Despite this, it held that MDB's failure to preserve the replaced parts caused Versa prejudice that lesser sanctions could not cure and ordered MDB's claims dismissed with prejudice.

MDB appealed. Versa filed a motion for attorney fees and costs, which the district court granted in part and denied in part. Versa appealed and MDB cross-appealed from this order. This court consolidated the appeals and cross-appeals, so this opinion resolves them all.

II.

A.

Spoliation occurs when a party fails to preserve evidence it knows or reasonably should know is relevant to actual or anticipated

Supreme Court
OF
Nevada

(O) 1947A

7

litigation. *Fire Ins. Exch. v. Zenith Radio Corp.*, 103 Nev. 648, 651, 747 P.2d 911, 914 (1987). Historically, Nevada courts have relied on NRCP 37(b) as the source of their authority to sanction a party for spoliation of evidence. *Id.* at 649, 747 P.2d at 912; *see Stubli v. Big D Int'l Trucks, Inc.*, 107 Nev. 309, 312, 810 P.2d 785, 787 (1991). Because NRCP 37(b) only authorizes sanctions against a party who disobeys a court order, the rule does not literally apply to most pre-litigation spoliation, where no court order to preserve or produce evidence is in place. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 367-68 (9th Cir. 1992) (declining to apply NRCP 37(b)'s counterpart, Fed. R. Civ. P. 37(b), to pre-litigation spoliation and questioning this court's reliance on Rule 37(b) in *Fire Insurance Exchange* and *Stubli*). But, separate and apart from the Rules of Civil Procedure, courts have inherent authority to manage the judicial process so as to achieve the fair, orderly, and expeditious disposition of cases, which empowers them to impose sanctions for pre-litigation spoliation of physical evidence. *Id.* at 368 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (stating that "[t]he right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation" and noting that "the power is limited to that necessary to redress conduct 'which abuses the judicial process'") (quoting *Chambers*, 501 U.S. at 45); *see Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990) (invoking the court's inherent authority and NRCP 37(b) in affirming the district court's imposition of case-terminating

sanctions on a party who abused the judicial process by fabricating evidence and then refused to account for it after the court ordered him to do so).[1]

A district court has discretion in choosing spoliation sanctions. *Stubli*, 107 Nev. at 312, 810 P.2d at 787. But "[f]undamental notions of fairness and due process require that [the] sanctions be just and . . . relate to the specific conduct at issue." *GNLV Corp. v. Serv. Control Corp.*, 111 Nev. 866, 870, 900 P.2d 323, 325 (1995). "The dismissal of a case, based upon . . . the destruction or loss of evidence, should be used only in extreme situations; if less drastic sanctions are available, they should be utilized." *Id.* (internal quotation omitted).

Because case-terminating sanctions are so harsh, this court applies a heightened standard of review to orders imposing them. *GNLV*, 111 Nev. at 869, 900 P.2d at 325; *Young*, 106 Nev. at 92, 787 P.2d at 779.

---

[1]Effective March 1, 2019, this court amended NRCP 37 to adopt as NRCP 37(e) the language added to Fed. R. Civ. P. 37(e) in 2015. *See In re Creating a Comm. to Update and Revise the Nev. Rules of Civil Procedure*, ADKT 0522 (Order Amending the Rules of Civil Procedure Dec. 31, 2018). As amended, NRCP 37(e) authorizes the imposition of sanctions on a party who "failed to take reasonable steps to preserve" electronically stored information (ESI) "that should have been preserved in the anticipation or conduct of litigation." Like its federal counterpart, NRCP 37(e) by its terms "applies only to electronically stored information." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Because ESI poses unique spoliation concerns, federal courts have maintained separate legal analyses governing the spoliation of ESI versus other forms of tangible evidence, applying the ESI-specific Fed. R. Civ. P. 37(e) to the former and their inherent authority caselaw to the latter. *E.g.*, *Best Payphones, Inc. v. City of New York*, 1-CV-3924 (JG) (VMS), 1-CV-8506 (JG) (VMS), 3-CV-0192 (JG) (VMS), 2016 WL 792396, at *3 (E.D.N.Y. Feb. 26, 2016). Neither MDB nor Versa argues that NRCP 37(e) applies to spoliation of tangible evidence at issue on this appeal.

Factors a district court should consider before imposing case-terminating sanctions include:

> the degree of willfulness of the offending party, the extent to which the non-offending party would be prejudiced by a lesser sanction, the severity of the sanction of dismissal relative to the severity of the discovery abuse, whether any evidence has been irreparably lost, the feasibility and fairness of alternative, less severe sanctions, such as an order deeming facts relating to improperly withheld or destroyed evidence to be admitted by the offending party, the policy favoring adjudication on the merits, whether sanctions unfairly operate to penalize a party for the misconduct of his or her attorney, and the need to deter both the parties and future litigants from similar abuses.

*Young*, 106 Nev. at 93, 787 P.2d at 780; *see GNLV*, 111 Nev. at 870, 900 P.2d at 325-26. Essentially, the *Young* factors come down to the willfulness or culpability of the offending party, the prejudice to the non-offending party caused by the loss or destruction of evidence, and "the feasibility and fairness of alternative, less severe sanctions." *Young*, 106 Nev. at 93, 787 P.2d at 780. In assessing these factors, the district court must apply "a proper standard of law." *Bass-Davis v. Davis*, 122 Nev. 442, 448, 134 P.3d 103, 106 (2006) (internal quotation omitted). Whether the district court applied the proper standard of law is reviewed de novo, not deferentially. *See Liu v. Christopher Homes, LLC*, 130 Nev. 147, 151, 321 P.3d 875, 877 (2014).

### B.

### 1.

The first *Young* factor—"the degree of willfulness of the offending party"—tasks the district court with assessing the culpability or fault of the party against whom spoliation sanctions are sought. MDB urges

Supreme Court
of
Nevada

(O) 1947A

10

that, for purposes of case-terminating sanctions, "willfulness" means more than negligence: It requires an intent to gain a litigation advantage and harm one's party opponent by destroying material evidence. As support, MDB cites *Bass-Davis*, 122 Nev. 442, 134 P.3d 103.

*Bass-Davis* did not concern case-terminating sanctions for spoliation of evidence. It addressed the two principal forms of jury instructions available to remedy spoliation: (1) a permissive adverse inference instruction advising "the jury that it could (but need not) draw a negative inference from the missing evidence," *id.* at 451, 134 P.3d at 108; and (2) a rebuttable presumption instruction advising "[t]hat evidence willfully suppressed would be adverse if produced," as provided in NRS 47.250(3), *see id.* at 452, 134 P.3d at 109. *Bass-Davis* held that negligent failure to preserve relevant evidence supports only a permissive adverse inference instruction. *Id.* at 449, 134 P.3d at 107. For the stronger rebuttable presumption instruction to be given, "willful suppression or destruction" of evidence must exist; this "requires more than simple destruction of evidence and instead requires that evidence be destroyed *with the intent to harm another party*." *Id.* at 452, 134 P.3d at 109 (emphasis added); *see id.* at 448, 134 P.3d at 106 (noting that "willful or intentional spoliation of evidence requires the intent to harm another party through the destruction and not simply the intent to destroy evidence").

The district court rejected MDB's request that it use the *Bass-Davis* definition of "willfulness" in assessing its culpability. Instead, the district court looked to a criminal jury instruction defining "willfully" for purposes of child abuse:

> The word "willfully," when applied to the intent with which an act is done or omitted . . . implies simply a purpose or willingness to commit the act



or to make the omission in question. *The word does not require in its meaning any intent to violate law, or to injure another, or to acquire any advantage.*

*Childers v. State*, 100 Nev. 280, 282-83, 680 P.2d 598, 599 (1984) (emphases added). Applying *Childers*, the district court found willfulness despite also finding that MDB had no intent to harm Versa or its litigation position when it discarded the replaced parts: "The Court does not find MDB intentionally disposed of the components in order to harm Versa, nor were MDB's employees acting with any malevolence; however, the Court does find MDB is complicit of benign neglect and indifference to the needs of Versa regarding discovery in this action."

The district court's approach allows case-terminating sanctions for negligent spoliation of evidence despite that, under *Bass-Davis*, mere negligent spoliation does not support a rebuttable presumption instruction under NRS 47.250(3). This conflicts with the core principle that case-terminating sanctions are a last resort, appropriate only when no lesser sanction will do. To be sure, appellate courts have upheld case-terminating sanctions for negligent destruction of material evidence where the party opponent can prove the loss of evidence caused extreme and incurable prejudice. *See Silvestri*, 271 F.3d at 593; *Mont. State Univ.-Bozeman v. Mont. First Judicial Dist. Court*, 426 P.3d 541, 553-54 (Mont. 2018). But the general rule is that, without willfulness, bad faith, or an intent to harm, case-terminating sanctions for pre-litigation spoliation of evidence is unwarranted. *See Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006) (stating that "to warrant dismissal as a sanction for spoliation of evidence there must be a finding of intentional destruction indicating a desire to suppress the truth") (internal quotation omitted); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) ("[A] finding of

willfulness, fault, or bad faith is required for dismissal to be proper [for spoliation of evidence].") (internal quotation omitted); *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328 (Fed. Cir. 2011) ("Dismissal is a harsh sanction, to be imposed only in particularly egregious situations where a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.") (internal quotation omitted); 2 Stephen E. Arthur & Robert S. Hunter, *Federal Trial Handbook: Civil* § 72:16 (4th ed. 2018-19) ("Dismissal as [a] sanction for spoliation of evidence is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party."); *see also* NRCP 37(e)(2), discussed in note 1, *supra* (authorizing case-terminating sanctions for failure to preserve ESI "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation").

Versa argues that *Fire Insurance Exchange* and *Stubli* equate willfulness with simple negligence and therefore conflict with and survive *Bass-Davis* outside the jury instruction context. But *Fire Insurance Exchange* did not address willfulness; it focused on the now-settled question of a court's authority to impose sanctions for pre-litigation spoliation of evidence in the context of an order striking expert testimony. 103 Nev. at 651, 747 P.2d at 913-14. And while the dissent in *Stubli* broached the "intent to harm" component of willfulness, 107 Nev. at 315, 810 P.2d at 788-89 (Rose and Springer, JJ., dissenting), the majority did not engage on the issue. It deemed the spoliator's actions "willful" and concentrated instead on the legal issue of a court's authority to impose case-terminating sanctions for pre-litigation spoliation of evidence. *Id.* at 313, 810 P.2d at 787-88. Thus, neither *Fire Insurance Exchange* nor *Stubli* supports imposing case-terminating sanctions for negligent loss of evidence, without more. *See also*

*GNLV*, 111 Nev. at 871, 900 P.2d at 326 (reversing order imposing case-terminating sanctions for negligent loss of evidence, though suggesting a different outcome might obtain if the sanctions had not prejudiced an innocent third party's claims).

In assessing MDB's culpability, the district court should have applied the *Bass-Davis* definition of "willfulness," not the criminal jury instruction definition from *Childers*. This error affected its remaining analysis.

2.

The second and fourth *Young* factors—"the extent to which the non-offending party would be prejudiced by a lesser sanction" and "whether any evidence has been irreparably lost"—require the district court to assess the prejudice to the non-offending party caused by the loss or destruction of evidence. Prejudice, in this context, depends on the extent and materiality of the evidence lost or destroyed. *See Micron*, 645 F.3d at 1328 (stating that spoliation is prejudicial when it "materially affect[s] the substantial rights of the adverse party and is prejudicial to the presentation of his case") (alteration in original) (internal quotation omitted). If the spoliating party willfully destroyed evidence—i.e., destroyed evidence with the intent to harm the opposing party's case—a rebuttable presumption arises that the evidence was materially adverse to that party. *Bass-Davis*, 122 Nev. at 449, 134 P.3d at 107 (applying NRS 47.250(3)); *see Micron*, 645 F.3d at 1328; *Mont. State Univ.*, 426 P.3d at 553. Absent willfulness, the burden lies with the party seeking the imposition of sanctions to prove actual prejudice by showing that the evidence was material to the party's case and that its loss inflicted irreparable harm. *Mont. State Univ.*, 426 P.3d at 554 ("Mere speculation, conjecture, or possibility that negligently-spoliated evidence was materially favorable to the opposing party is insufficient to warrant a

severe sanction on the merits."); *see GNLV*, 111 Nev. at 871, 900 P.2d at 326 (reversing order imposing case-terminating sanctions for the negligent loss of evidence in a slip-and-fall case where eyewitness testimony was available to establish the bath mat's condition).

The district court's error in defining willfulness thus carried over into its prejudice analysis. Given that MDB acted negligently—not willfully—when it discarded the replaced parts, Versa bore the burden of proving that the loss of this evidence materially prejudiced its case in a way lesser sanctions could not cure. Yet, the district court credited Versa's claim of incurable prejudice without adequately evaluating alternative measures. As an example, Versa maintained that it needed the discarded cords to determine whether they had abraded to the extent that a bare wire from the 7-way cord could pass a current to a bare wire from the 4-way cord, activating the valve and opening the dump gate, even with the master and trailer switches in the "off" position. The point dividing the experts was not whether cords can abrade—MDB company witnesses admitted they can—but whether such abrasion could account for the uncommanded activation of the Versa valve. No reason appears why Versa could not establish its theory by abrading identical cords and testing them on a replica model or even on the Koski rig itself, at MDB's expense. *See* Jamie S. Gorelick, Stephen Marzen, Lawrence Solum & Arthur Best, *Destruction of Evidence* § 3.16 (Aspen 2020) (noting that, among the sanctions available for spoliation of evidence, is an order requiring a spoliator to pay for the reconstruction of destroyed evidence to re-create the incident). On remand, the district court should consider whether Versa can meet its burden of proving prejudice.

3.

The fifth *Young* factor—"the feasibility and fairness of alternative, less severe sanctions, such as an order deeming facts relating to improperly withheld or destroyed evidence to be admitted by the offending party"—requires the district court to consider lesser sanctions before imposing case-terminating sanctions for spoliation of evidence. In determining whether the district court properly considered lesser sanctions, we examine "whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would be inappropriate." *Leon*, 464 F.3d at 960 (internal quotation omitted).

In this case, MDB argued that its negligent failure to preserve the replaced parts did not support case-terminating sanctions but, at most, a permissive adverse inference instruction under *Bass-Davis*. The court rejected MDB's argument, reasoning as follows:

> The Court does not find an adverse inference instruction pursuant to NRS 47.250(3) and *Bass-Davis v. Davis*, 122 Nev. 442, 134 P.3d 103 (2006), is appropriate . . . . [A]n adverse inference instruction requires "an intent to harm another party through the destruction and not simply the intent to destroy evidence." *Bass-Davis*, 122 Nev. at 448, 134 P.3d at 106. The Court does not find MDB intended to harm Versa by destroying or disposing of the electrical components; therefore it could not give this instruction.

The analysis is incorrect. *Bass-Davis* addressed *two* potential forms of jury instructions to address spoliation: a rebuttable presumption instruction under NRS 47.250(3), and a permissive adverse inference instruction. While *Bass-Davis* holds that a district court may not give a rebuttable presumption instruction absent an intent to harm—or "willfulness"—it supports giving a permissive adverse inference instruction against a party

SUPREME COURT
OF
NEVADA

(O) 1947A

who negligently fails to preserve evidence. *See Bass-Davis*, 122 Nev. at 451, 134 P.3d at 109. Such an instruction would permit, but not require, the jury to infer that MDB replaced and discarded the cords because they had abraded or been cut, as Versa maintained. It would then be up to the jury to decide whether to believe Koski's statement that the switches were "off" and which expert to believe.

Courts have adopted a variety of measures, short of case-terminating sanctions, to redress spoliation of evidence. These measures include "attorneys' fees and costs [associated with curative discovery], monetary sanctions for the cost of reconstructing destroyed evidence, . . . issue-related sanctions, the exclusion of testimony from the spoliator's witnesses regarding the destroyed material, [and] jury instructions on the spoliation inference." Gorelick, *supra*, at § 3.16. For non-willful destruction of evidence, these and other measures, including the permissive adverse inference instruction *Bass-Davis* authorizes for negligent spoliation of evidence, must be considered.

## C.

The district court's sanction order was predicated on its finding that MDB had a pre-litigation duty to preserve the discarded parts, or at least, to take pictures of them before throwing them away. A party has a duty to preserve evidence "which it knows or reasonably should know is relevant," *Bass-Davis*, 122 Nev. at 450 n.19, 134 P.3d at 108 n.19, to litigation that is pending or reasonably foreseeable, *Micron*, 645 F.3d at 1320. MDB admits knowing litigation was pending or reasonably foreseeable when it discarded the parts, but denies that it knew or should have known the discarded parts were relevant. The parts' relevance represents a factual determination for the district court. Nothing in this

opinion precludes the district court from revisiting this threshold determination on remand, if it deems it appropriate to do so.

### III.

The judgment imposing case-terminating sanctions on MDB is reversed and the cases are remanded for further proceedings consistent with this opinion. The orders granting in part and denying in part Versa's motions for costs and fees are vacated.

_____*Pickering*_____, C.J.
Pickering

We concur:

_____, J.
Parraguirre

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A

18